BEULAH MONROE, Plaintiff v. CITY OF NEW BERN, NORTH CAROLINA,
Defendant

No. COA02-498

(Filed 3 June 2003)

**Cities and Towns— demolition of house—no notice—sufficiency of threat to public**

The City of New Bern's demolition of a house owned by plaintiff without the required notice should have resulted in summary judgment for plaintiff. Pursuant to N.C.G.S. § 160A-193, a city may demolish a building without providing notice or a hearing to the owner only if the building constitutes an imminent danger to the public health or safety. The record in this case does not establish that the condition of the house posed such a threat.

Appeal by plaintiff from an order and judgment entered 15 November 2001 by Judge Benjamin G. Alford in Craven County Superior Court. Heard in the Court of Appeals 11 February 2003.

*Ralph T. Bryant, Jr., P.A., by Ralph T. Bryant, Jr., for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Gregory Wenzl Brown and Katherine Hilkey-Boyatt, for defendant-appellee.*

HUNTER, Judge.

Beulah Monroe ("plaintiff") appeals from the trial court's entry of summary judgment in favor of defendant, City of New Bern, North Carolina ("the City"), and denial of plaintiff's motion for summary judgment. For the reasons stated herein, we reverse the trial court's summary judgment entered in favor of the City and remand for entry of summary judgment in favor of plaintiff. We additionally remand this case for a trial to be held on the issue of damages.

This action arises from the City's demolition of plaintiff's house located on 212 Bryan Street, next to a daycare, in New Bern, North Carolina. According to plaintiff and John Clark ("Clark"), Chief Building Inspector for the City, plaintiff was given no notice nor an opportunity to be heard prior to demolition, which occurred on 6 and 7 April 2000. A lien for the cost of demolition in the amount of $6,033.75 was placed on plaintiff's property. The tax value on this

house was $43,850.00. At the time of demolition, plaintiff's house was boarded up and had been since March of 1997.

The condition of plaintiff's house was described in deposition testimony submitted to the court. The roof of the house had severely deteriorated to the point of partially caving in and there was heavy water infiltration throughout the structure. The plaster or the sheet rock had come off the ceiling of the second floor, and the floors were completely littered. In addition, the brick veneer on the exterior of the house had severe cracks in several locations. The windows were broken out and some of the ceiling joists had rotted from water infiltration over the years. Dead rats were observed in the bathtub. The paint on the walls was cracked. The inspectors were unable to go upstairs due to caved in portions of the house. Christopher Holmes ("Holmes"), a civil engineer acting as an expert for plaintiff, had reviewed pictures and a video of plaintiff's house and opined in a deposition that for the house to have been saved, it would have had to have been gutted down to the frame and the roof and flooring would have had to have been completely replaced. David Lavigne, a real estate appraiser, testified in a deposition that plaintiff's house was worthless and that the "highest and best use" demanded demolition.

Holmes testified that the house was not structurally sound and that it presented a danger to anyone who wandered into the house. When asked whether he thought the house was a danger to the public in its boarded up state, Holmes responded that it could be since vagrants might still find a way into the house. When asked whether he thought the house was a danger to the public if it was boarded up and no one was inside, he stated that besides the possibility that animals could get into the house and breed, the house did not present a threat to the safety of the public. Holmes further stated that he did not think there was a danger of the house collapsing onto a passerby.

Plaintiff filed a complaint on 21 July 2000, alleging that the demolition of her house constituted an unconstitutional taking of her property without just compensation under the North Carolina Constitution, the destruction violated her due process rights under the North Carolina Constitution, the application of the City's ordinance violated her equal protection rights under the North Carolina Constitution, and the City's actions constituted an unfair and deceptive trade practice. The City filed an answer to this complaint on 25 September 2000, denying liability for the demolition of plaintiff's house and later filed an amended answer on 3 April 2001, includ-

ing a counterclaim seeking recovery for the costs and expenses associated with the demolition of plaintiff's property. Both the City and plaintiff filed motions for summary judgment. Subsequently, plaintiff filed an amended complaint which included a trespass claim. At the summary judgment hearing, plaintiff stipulated that she was voluntarily dismissing all claims except her due process claim under the North Carolina Constitution and her common law trespass claim under North Carolina law. After hearing oral arguments from both sides and considering the evidence submitted, the trial court granted the City's motion for summary judgment, denied plaintiff's motion for summary judgment, and dismissed plaintiff's claims with prejudice. Plaintiff appeals.

Plaintiff contends the trial court erred in granting the City's motion for summary judgment and denying her motion for summary judgment. Plaintiff asserts that defendant is liable as a matter of law for the demolition of her house since the City failed to give her any of the notices or procedures required by the New Bern City Ordinance, the North Carolina General Statutes, and the North Carolina Constitution prior to demolition. On the contrary, the City argues the trial court properly granted its motion for summary judgment and properly denied plaintiff's motion for summary judgment because it had the authority to summarily demolish plaintiff's house pursuant to N.C. Gen. Stat. § 160A-193 (2001), entitled "[a]batement of public health nuisances."

At the outset, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). In ruling on a summary judgment motion, the court "must view all evidence in the light most favorable to the non-movant, taking the non-movant's asserted facts as true, and drawing all reasonable inferences in her favor." *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 611, 538 S.E.2d 601, 607 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 372, 547 S.E.2d 811 (2001).

N.C. Gen. Stat. § 160A-193, the statute the City asserts afforded it the authority to summarily demolish plaintiff's house, provides: "A city shall have authority to summarily remove, abate, or remedy everything in the city limits, or within one mile thereof, that is dangerous or prejudicial to the public health or public safety." N.C. Gen. Stat. § 160A-193(a). Neither party has provided us with, nor have we

found, any North Carolina cases in which a city has summarily demolished a building without providing notice or a hearing to the owner. Therefore, we have no precedent establishing circumstances when a building may summarily be destroyed. "In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished." *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). To reach that end, we must consider "the language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980). Moreover, "where a statute is susceptible to two interpretations—one constitutional and one unconstitutional—the Court should adopt the interpretation resulting in a finding of constitutionality." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388 (1978).

Applying these canons of statutory construction, we interpret Section 160A-193 as providing a city with the authority to summarily demolish a building only if the building constitutes an imminent danger to the public health or safety, creating an emergency necessitating the building's immediate demolition. We construe Section 160A-193 narrowly in accordance with legislative intent. Our General Assembly has provided notice and hearing requirements in N.C. Gen. Stat. §§ 160A-441 through 160A-450 (2001) that a city must follow in demolishing a person's dwelling in a non-emergency. Section 160A-193 only applies to a situation where a structurally unsafe building poses an imminent danger to the safety of the public such that the owner could not be provided notice and a hearing without endangering the public. Cities may not summarily demolish dwellings pursuant to Section 160A-193 merely because it is quicker and easier than providing the owners notice and an opportunity to be heard. Our interpretation of Section 160A-193 is in accordance with the general rule that "a municipality must, before destroying a building, give an owner sufficient notice, a hearing and ample opportunity to demolish the building or to do what suffices to make it safe or healthy for use and occupancy," as required by due process of law. 7A Eugene McQuillin, *The Law of Municipal Corporations*, § 24.561, at 183 (3d ed. 1998) (footnotes omitted). "[V]ested rights in a building cannot be destroyed summarily as a nuisance unless in a great emergency." *Id.* at 185. *See also Leppo v. City of Petaluma*, 97 Cal. Rptr. 840, 843 (Cal. Ct. App. 1971) (citation omitted) (stating that "[i]n an emergency situation involving the physical safety of the populace, the city could dispense with a due process hearing and demolish a building summarily"); *Rowland v. State*, 176 So. 545, 546-47 (Fla. 1937)

(noting that "[b]efore private property may be condemned and destroyed in the exercise of police power, except in cases of emergency, there must be an opportunity for the owner or occupant to be heard"). Accordingly, we hold that pursuant to Section 160A-193, a city may only demolish a building without providing notice or a hearing to the owner if the building constitutes an imminent danger to the public health or safety necessitating its immediate demolition. For instance, a city would have the authority to summarily demolish a building pursuant to Section 160A-193 if the building were in such a ruinous state that it was on the verge of falling onto a sidewalk frequented by pedestrians or in a situation where the destruction of the building is necessary to stop or control a large destructive fire.

If a city wishes to destroy a dwelling that does not pose an imminent threat to the public, then the city must follow the procedures required by N.C. Gen. Stat. §§ 160A-441 through 160A-450.

> N.C. Gen. Stat. § 160A-441 confers upon cities and counties the power to exercise their police powers by adopting and enforcing ordinances ordering a property owner to repair, close, or demolish dwellings that are determined to be unfit for human habitation and therefore dangerous and injurious to the health and safety of the public.

*Newton v. City of Winston-Salem*, 92 N.C. App. 446, 449, 374 S.E.2d 488, 490 (1988). The enabling legislation provides that an ordinance adopted by a city to regulate buildings unfit for human habitation must contain certain procedures that the city must follow prior to demolition of a dwelling including providing the owner with notice, a hearing, and a reasonable opportunity to bring his or her dwelling into conformity with the housing code. N.C. Gen. Stat. § 160A-443. In the case *sub judice*, the City had adopted an ordinance pursuant to Sections 160A-441 through 160A-150, setting out the necessary procedures for the City to follow in its demolition of a dwelling.

It is undisputed in this case that the City did not follow the procedural requirements under Sections 160A-441 through 160A-450, but instead, demolished plaintiff's house pursuant to Section 160A-193, without providing plaintiff notice or a hearing. Therefore, the dispositive issue in this case is whether plaintiff's house posed an imminent danger to the health or safety of the public requiring its immediate demolition under Section 160A-193, or whether the house was not an imminent threat to the public thus, entitling the owner to the notice and hearing requirements mandated under Sections 160A-441 through

160A-450. We conclude the record does not establish that the condition of plaintiff's house posed an imminent danger to the health or safety of the public and therefore, the City did not have authority under Section 160A-193 to summarily demolish the house. There is no evidence that an emergency existed to warrant immediate destruction. Plaintiff's house was boarded up in March of 1997 after the City sent plaintiff a notice that it wished to board up the house so that people could not get inside. Therefore, the City was well aware of the decaying state of plaintiff's house and the danger it posed to anyone occupying the home several years prior to demolition. The building inspectors who went to investigate the condition of the house prior to demolition had to remove a panel off the front door in order to enter the house. Further, according to Holmes, a civil engineer, the house would be dangerous to anyone who occupied it but that it was unlikely the house was going to fall onto a passerby. Holmes indicated that the house was not a threat to the public while boarded up with no one inside. Moreover, there was no evidence that anyone, including vagrants, were living in the dwelling. While there was evidence that plaintiff's house was in severe disrepair, we do not conclude that its condition posed an imminent threat to the public, warranting its immediate demolition. We acknowledge that there was testimony that members of the public could have possibly found a way into the home by either taking some boards down or climbing into a window that was not completely boarded up. However, we conclude this danger is not the kind of imminent danger to the public contemplated by Section 160A-193.

Since it is undisputed that the City did not comply with the procedural requirements of N.C. Gen. Stat. §§ 160A-441 through 160A-450, the City is liable in damages to plaintiff, as a matter of law, for demolishing plaintiff's house. See Newton, 92 N.C. App. 446, 374 S.E.2d 488. Accordingly, we reverse the trial court's summary judgment entered in favor of the City and remand for entry of summary judgment in favor of plaintiff. We further remand this case for a trial on the issue of damages.

Reversed and remanded.

Judges BRYANT and ELMORE concur.