MOAYYAD AL-NASRA, Plaintiff,
v.
CLEVELAND COUNTY, WILLIAM E. McCARTER and TERRY CLARK, Defendants.
No. COA09-316.
Court of Appeals of North Carolina.
Filed: February 16, 2010.
This case not for publication
Flowers & Martin, P.A., by Fred A. Flowers, for plaintiff-appellee.
Womble Carlyle Sandridge & Rice, PLLC, by Sean F. Perrin, for defendants-appellants.
CALABRIA, Judge.
Cleveland County ("the county"), William E. McCarter ("McCarter") and Terry Clark ("Clark") (collectively "defendants") appeal an order that denies, in part, their motion for summary judgment based on sovereign immunity as to plaintiff's claims of condemnation or inverse condemnation and claims based on unlawful taking of plaintiff's property, both real and personal, as a result of violations of statutory procedure, the county ordinances, and North Carolina Const. art. I, § 19 (2007). We affirm.

I. FACTS
On 5 October 2001, McCarter, the Code Enforcement Officer, and Clark as the Building Inspector for the county, investigated complaints regarding the condition of homes owned by Moayyad Al-Nasra ("plaintiff"). The homes were located at 313, 315, and 317 Kellum Drive ("the Kellum Drive properties") and 358 Oates Drive ("the Oates Drive property") (collectively "the properties") in Cleveland County, North Carolina.
After McCarter and Clark investigated, they determined the homes violated portions of the Cleveland County Minimum Housing Code ("the code") and notified plaintiff of a hearing. On 28 February 2002, McCarter held a hearing and determined that the Kellum Drive properties were unfit for human habitation. By order on 6 March 2002, McCarter ordered plaintiff to repair or demolish the Kellum Drive properties.
On 4 March 2003, McCarter wrote a memo to plaintiff explaining that none of the homes on the properties would be demolished "as long as [McCarter could] see that progress [was] being made to improve the dwelling[s]." Plaintiff repaired and improved all the homes on the properties, incurring costs of "several thousand dollars." On 2 November 2005, the Cleveland County Board of Commissioners approved an ordinance authorizing the code enforcement officer to demolish the Kellum Drive properties. Plaintiff had no notice of the hearing or an opportunity to be heard regarding any improvements that had been made. On 25 February 2006, defendants burned and destroyed the Kellum Drive properties. On 14 July 2007, defendants burned and destroyed the Oates Drive property. Since plaintiff was unaware that the homes would be burned and destroyed, he had not removed personal property that was inside the properties.
On 20 November 2007, plaintiff filed an action in Cleveland County Superior Court, alleging trespass, conversion, negligence, tortious conduct, improper lien, condemnation, and destruction of property contrary to statutory procedure and a taking without just compensation in violation of North Carolina Const. art. I, § 19 (2007), county ordinances, and due process of law. On 21 August 2008, defendants filed a motion for summary judgment, along with supporting affidavits, contending they were entitled to judgment as a matter of law because, inter alia, plaintiff's claims were barred by sovereign immunity.
On 20 November 2008, the trial court granted defendants' motion for summary judgment for trespass, conversion, negligence, tortious conduct, and improper lien. However, the trial court denied defendants' motion for summary judgment based on sovereign immunity as to plaintiff's claims of condemnation or inverse condemnation and claims based on unlawful taking of plaintiff's property, both real and personal, as a result of violations of statutory procedure, the county ordinances, and North Carolina Const. art. I, § 19 (2007). Defendants appeal from the portion of this order denying summary judgment.

II. SOVEREIGN IMMUNITY
As an initial matter, we note that an order denying summary judgment is an interlocutory order and generally not immediately appealable. See Hallman v. Charlotte-Mecklenburg Bd. of Educ., 124 N.C. App. 435, 437, 477 S.E.2d 179, 180 (1996). "If, however, `the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review[,]' we may review the appeal under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1)." McCallum v. N.C. Coop. Extension Serv., 142 N.C. App. 48, 50, 542 S.E.2d 227, 230-31 (2001) (quoting N.C. Dept. of Transportation v. Page, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995)). "The moving party must show that the affected right is a substantial one, and that deprivation of that right, if not corrected before appeal from final judgment, will potentially injure the moving party. Whether a substantial right is affected is determined on a case-by-case basis." Id. at 50, 542 S.E.2d at 231 (internal citations omitted). An interlocutory order that denies summary judgment on the basis of governmental immunity affects a substantial right and is immediately appealable. See Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 337-38, 678 S.E.2d 351, 354 (2009); Childs v. Johnson, 155 N.C. App. 381, 384-85, 573 S.E.2d 662, 665 (2002). A county's appeal of the denial of summary judgment is properly before this Court because an appeal which presents a defense of sovereign immunity has been held by this Court to be immediately appealable because it affects a substantial right. Murray v. County of Person, 191 N.C. App. 575, 577, 664 S.E.2d 58, 60 (2008). Therefore, defendants' appeal is properly before this Court.
Defendants argue that the trial court erred in denying their motion for summary judgment on grounds of sovereign immunity since they were performing a governmental function and did not waive their right to sovereign immunity through the purchase of insurance. We disagree.
"The standard of review on appeal from a summary judgment order is de novo." Schwarz v. Caldwell County R. Co., ___ N.C. App. ___, ___, 677 S.E.2d 546, 548 (2009) (citation omitted). "Summary judgment is appropriate if `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" Forbis v. Neal, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007)). "In ruling on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party, who is entitled to the benefit of all favorable inferences that may reasonably be drawn from the facts proffered." Daniel v. City of Morganton, 125 N.C. App. 47, 51-52, 479 S.E.2d 263, 266 (1997) (citation omitted).

III. PERFORMING A GOVERNMENT FUNCTION
Defendants contend that they are entitled to sovereign immunity because the actions of the county in maintaining minimum housing standards is a government function. We disagree.
"Under the doctrine of governmental immunity, a municipality is not liable for the torts of its officers and employees if the torts are committed while they are performing a governmental function[.]" Taylor v. Ashburn, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993) (emphasis added). "`It is also well-settled that when an action is brought against individual officers in their official capacities the action is one against the [S]tate for the purposes of applying the doctrine of sovereign immunity.'" DeMurry v. Dept. of Corrections, ___ N.C. App. ___, ___, 673 S.E.2d 374, 380 (2009) (quoting Whitaker v. Clark, 109 N.C. App. 379, 381-82, 427 S.E.2d 142, 143-44 (1993)). The condemnation of a person's property for use as a dwelling is a governmental function. Dale v. Morganton, 270 N.C. 567, 571, 155 S.E.2d 136, 140 (1967).
In the instant case, plaintiff claimed he did not receive notice of the ordinance that his properties would be burned. Defendants denied this allegation in their answer and believe that plaintiff misstates both the enabling statute and the code to require more procedures than mandated by either N.C. Gen. Stat. § 160A-443(3) or CLEVELAND CTY., N.C., MINIMUM HOUSING CODE, Art. III, § 3.5-44(b).
Under N.C. Gen. Stat. § 160A-441 et seq. (2007), counties may adopt ordinances relating to repair, closing, and demolition of dwellings. "A[n]...ordinance adopted to regulate buildings which are determined to be unfit for human habitation `must contain certain procedures that the [county] must follow prior to demolition of a dwelling including providing the owner with notice, a hearing, and a reasonable opportunity to bring his or her dwelling into conformity with the housing code.'" Lawyer v. City of Elizabeth City, ___ N.C. App. ___, ___, 681 S.E.2d 415, 418 (2009) (quoting Monroe v. City of New Bern, 158 N.C. App. 275, 279, 580 S.E.2d 372, 375 (2003)). Such ordinances must include a provision stating that a notice and hearing are required before a public officer declares a dwelling unfit for human habitation. N.C. Gen. Stat. § 160A-443(3) (2007). Findings of fact in support of this determination must be served on the owner of the property. Id. The language of the code complies with these requirements. CLEVELAND CTY., N.C., MINIMUM HOUSING CODE, Art. III, § 3.5-44 (2000). Such ordinances must have a requirement stating that "if the owner fails to comply with an order to remove or demolish the dwelling, the public officer may cause such dwelling to be removed or demolished." N.C. Gen. Stat. § 160A-443(5) (2007). This requirement is reflected in § 3.5-45 of the code. CLEVELAND CTY., N.C., MINIMUM HOUSING CODE, Art. III, § 3.5-45 (2000).
Furthermore, N.C. Gen. Stat. § 160A-443 (2007) requires that "[n]o such ordinance shall be adopted to require demolition of a dwelling until the owner has first been given a reasonable opportunity to bring it into conformity with the housing code." N.C. Gen. Stat. § 160A-443(5) (2007). "Complaints or orders issued by a public officer pursuant to an ordinance adopted under [N.C. Gen. Stat. § 160A-441 et seq.] shall be served upon persons either personally or by registered or certified mail." N.C. Gen. Stat. § 160A-445(a) (2007). A property owner must be served with notice of a hearing to determine the appropriateness of an ordinance to demolish a dwelling pursuant to N.C. Gen. Stat. § 160A-443(3)(b) (2007). Newton v. City of Winston-Salem, 92 N.C. App. 446, 451, 374 S.E.2d 488, 492 (1988).
[S]ection (3) of § 160A-443 authorizes the [county], after notice and hearing, to "issue and cause to be served upon the owner," an order to repair or an order to demolish. An order to repair is issued after a determination that repairs can be made at a reasonable cost in relation to the value of the dwelling. An order to demolish involves a different determination, namely, that the repairs cannot be made at a reasonable cost in relation to the value of the dwelling. These are clearly two distinct factual determinations supporting two distinct kinds of orders.
Id.
In the instant case, on 6 March 2002, plaintiff received an order from defendants stating that he was to repair or demolish the Kellum Drive properties. There is nothing in the record showing plaintiff received an order stating he was to repair or demolish the Oates Drive property. On 4 March 2003, plaintiff received notice from defendants that none of the properties would be demolished as long as McCarter could "see that progress [was] being made to improve the dwelling[s]." On 25 February 2006, defendants burned and destroyed the Kellum Drive properties and on 14 July 2007, defendants burned and destroyed the Oates Drive property. Defendants argue that plaintiff was given almost three years to fix the dwellings and that this was a "reasonable opportunity" according to N.C. Gen. Stat. § 160A-443(5).
"The Law of the Land Clause of the State Constitution forbids [destruction of a dwelling] without compensation except when necessary to protect the public health, safety, or morals or the general welfare." Horton v. Gulledge, 277 N.C. 353, 361, 177 S.E.2d 885, 890 (1970), overruled on other grounds, State v. Jones, 305 N.C. 520, 290 S.E.2d 675 (1982). "To require its destruction, without giving the owner a reasonable opportunity thus to remove the existing threat to the public health, safety and welfare, is arbitrary and unreasonable. Such power may not be delegated to or exercised by a municipal corporation of this State by reason of" N.C. Const. art. I, § 19.[1]Id. at 363, 177 S.E.2d at 892 (emphasis added).
[W]here one of the questions raised by a motion for summary judgment is one concerning the reasonableness of the actions of the movant, summary judgment is normally inappropriate, since the resolution of the question "necessarily involves conflicting interpretations of the perceived events, and even where all the surrounding facts and circumstances are known, reasonable minds may still differ over their application to the legal principles involved."
Farmers Bank v. City of Elizabeth City, 54 N.C. App. 110, 115, 282 S.E.2d 580, 584 (1981) (quoting Smith v. Currie, 40 N.C. App. 739, 743, 253 S.E.2d 645, 647 (1979)). Since reasonable minds may differ as to whether the time plaintiff received was a reasonable time to bring the properties into compliance with the code, summary judgment is inappropriate.

IV. LIABILITY INSURANCE
Defendants contend that the liability insurance in place in the county from 1 July 2005 until 1 July 2006 did not waive sovereign immunity. We disagree.
"Sovereign immunity may be waived by the purchase of liability insurance. A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." Patrick v. Wake Cty. Dep't of Human Servs., 188 N.C. App. 592, 595-96, 655 S.E.2d 920, 923 (2008) (internal citations omitted). N.C. Gen. Stat. § 153A-435(a) (2007) states:
A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment.

Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function.

(emphases added). "Thus, a municipality may waive its governmental immunity for civil liability in tort for negligent or intentional damage by purchasing liability insurance, but only to the extent of the insurance coverage." Dickens v. Thorne, 110 N.C. App. 39, 43, 429 S.E.2d 176, 179 (1993) (citations omitted) (emphasis added). "Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." Guthrie v. State Ports Authority, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983) (citations omitted).
In the instant case, the General Liability Coverage specifically excludes sovereign immunity, defined in the county's insurance policy as "any claim, demand, or cause of action against any Covered Person as to which any Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law." The General Liability Coverage also specifically excludes Public Officials Liability, defined as:
any liability for any actual or alleged error, misstatement, or misleading statement, act, or omission, or neglect or breach of duty by the Covered Person, or by any other person for whose acts [the county] is legally responsible arising out of the discharge of duties as a political subdivision or a duly elected or appointed member or official thereof.
The Public Officials Liability Coverage specifically excluded "[a]ny claim, demand or cause of action against any Covered Person as to which the Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law" and any claim "for loss, damage to or destruction of any tangible property, or the loss of use thereof by reason of the foregoing....[and] arising from inverse condemnation...." "Covered persons" are defined in the insurance policy as any person who "is a lawfully elected or appointed official of [the county] while acting under the jurisdiction of [the county] or within the course and scope of his/her authority or apparent authority, express or implied, but only with respect to his/her liability while acting within the course and scope of his/her authority." (emphasis added).
Plaintiff alleges defendants did not follow the code or procedures set forth in N.C. Gen. Stat. §§ 160A-443-450. Defendants contend these statutes do not contain any language explicitly or implicitly waiving a public official's right to sovereign immunity from tort-based claims arising from the exercise of police power to demolish uninhabitable homes.
Although the statutes do not contain such language, plaintiff's claims are not tort-based. The trial court granted summary judgment to defendants on plaintiff's original tort-based claims, i.e., trespass, conversion, negligence, tortious conduct, and improper lien. Plaintiff's remaining claims, which are the subject of the instant case, are statutory and constitutional claims. He asserted claims against defendants of condemnation or inverse condemnation and claims based on unlawful taking of his property, both real and personal, as a result of violations of statutory procedure, the county ordinances, and North Carolina Const. art. I, § 19 (2007).
"Inverse condemnation is simply a device to force a governmental body to exercise its power of condemnation, even though it may have no desire to do so." Smith v. City of Charlotte, 79 N.C. App. 517, 521, 339 S.E.2d 844, 847 (1986).
An action in inverse condemnation must show (1) a taking (2) of private property (3) for a public use or purpose. Although an actual occupation of the land, dispossession of the landowner, or physical touching of the land is not necessary, a taking of private property requires a substantial interference with elemental rights growing out of the ownership of the property. A plaintiff must show an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental.
Adams Outdoor Advertising v. N.C. Dept. of Transportation, 112 N.C. App. 120, 122, 434 S.E.2d 666, 667 (1993) (internal quotations and citations omitted).
While North Carolina does not have an express constitutional provision against the "taking" or "damaging" of private property for public use without payment of just compensation, this Court has allowed recovery for a taking on constitutional as well as common law principles. We recognize the fundamental right to just compensation as so grounded in natural law and justice that it is part of the fundamental law of this State, and imposes upon a governmental agency taking private property for public use a correlative duty to make just compensation to the owner of the property taken. This principle is considered in North Carolina as an integral part of "the law of the land" within the meaning of Article I, Section 19 of our State Constitution.
Long v. City of Charlotte, 306 N.C. 187, 195-96, 293 S.E.2d 101, 107-08 (1982) (internal citations and footnotes omitted).
Our Supreme Court has further stated:
The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights. It would indeed be a fanciful gesture to say on the one hand that citizens have constitutional individual civil rights that are protected from encroachment actions by the State, while on the other hand saying that individuals whose constitutional rights have been violated by the State cannot sue because of the doctrine of sovereign immunity.
Corum v. University of North Carolina, 330 N.C. 761, 785-86, 413 S.E.2d 276, 291 (1992). Our State Constitution, which includes the Declaration of Rights, i.e., Article I, is the supreme law of North Carolina. Id. at 786, 413 S.E.2d at 291-92. The Declaration of Rights trumps the common law defense of sovereign immunity. Id. at 786, 413 S.E.2d at 292.
[T]his Court has long held that when public officials invade or threaten to invade the personal or property rights of a citizen in disregard of law, they are not relieved from responsibility by the doctrine of sovereign immunity even though they act or assume to act under the authority and pursuant to the directions of the State.
Id. (emphasis added). Furthermore, our constitutional rights should not be determined by the specific language of the liability insurance policies carried by each county. Craig, 363 N.C. at 342, 678 S.E.2d at 357.
Defendants' insurance policy excludes from coverage claims of inverse condemnation and claims against those "Covered Persons" acting within the scope of their authority. Therefore, the county has not waived sovereign immunity as to these "covered persons." However, our Supreme Court's decision in Corum compels us to hold that sovereign immunity cannot bar claims such as condemnation and inverse condemnation that are protected by our State Constitution. Further, since we have held that plaintiff was not provided notice within the meaning of N.C. Gen. Stat. § 160A-443, defendants were acting outside the scope of their authority. Therefore, sovereign immunity as to defendants is waived in the instant case, and summary judgment is inappropriate.

V. CONCLUSION
We hold that the trial court properly denied, in part, defendants' motion for summary judgment on the grounds of sovereign immunity as to plaintiff's claims based on condemnation and North Carolina Const. art. I, § 19 (2007).
Affirmed.
Judge ELMORE concurs.
Judge WYNN concurs in the result.
Report per Rule 30(e).
NOTES
[1] The Horton Court did not address whether the defendant city gave the plaintiff homeowner a reasonable time to bring his property into compliance with the defendant's housing code. Horton, 277 N.C. at 363, 177 S.E.2d at 892.