IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-533

Filed 02 May 2023

Chatham County, No. 19 CVS 809

BARBARA CLARK PUGH; GENE TERRELL BROOKS; THOMAS HENRY CLEGG; THE WINNIE DAVIS CHAPTER 259 OF THE UNITED DAUGHTERS OF THE CONFEDERACY, Plaintiffs,

v.

KAREN HOWARD; MIKE DASHER; DIANNA HALES; JIM CRAWFORD; and ANDY WILKIE, in their official capacities as members of the Board of County Commissioners of Chatham County, North Carolina, Defendants,

and

CHATHAM FOR ALL and WEST CHATHAM BRANCH 5378 of the NAACP, Defendant-Intervenors.

Appeal by plaintiffs from order entered 10 December 2019 by Judge Susan E. Bray in Chatham County Superior Court. Heard in the Court of Appeals 21 February 2023.

*James A. Davis for plaintiffs-appellants.*

*Poyner Spruill LLP, by J. Nicholas Ellis and Dylan J. Castellino, for defendants-appellees.*

*Kilpatrick Townsend & Stockton LLP, by Joseph S. Dowdy and Phillip A. Harris, Jr., for defendants-intervenors-appellees.*

ZACHARY, Judge.

Plaintiffs Barbara Clark Pugh, Gene Terrell Brooks, Thomas Henry Clegg, and the Winnie Davis Chapter 259 of the United Daughters of the Confederacy ("the

UDC") (collectively, "Plaintiffs") appeal from the trial court's order dismissing their complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. We affirm in part, vacate in part, and remand the court's order for the reasons enunciated by our Supreme Court in *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 881 S.E.2d 32 (2022).

## *Background*

On 23 August 1907, the UDC erected and installed a 27-foot-tall Confederate monument (the "Monument") in a public ceremony in front of the Chatham County Courthouse to "honor th[e] individuals who had served in the armed forces of the Confederate States of America during the Civil War[.]" The Monument remained in front of the Courthouse until 2019.

On 19 August 2019, the Chatham County Board of County Commissioners (the "County Commissioners") voted to request that the UDC "remove and relocate" the Monument from the Courthouse grounds, at Chatham County's expense, by 1 November 2019. The County Commissioners informed the UDC that if it refused to remove the Monument, then Chatham County would do so.

Plaintiffs filed a complaint against the County Commissioners on 23 October 2019 in Chatham County Superior Court, seeking a declaratory judgment, a temporary restraining order, and a preliminary injunction. In their complaint, Plaintiffs alleged that the Monument was Chatham County property, in that Chatham County had accepted the UDC's dedication of the Monument and had

"specifically authorized" its placement at the Courthouse square. Plaintiffs further alleged that the Monument was an "object of remembrance" that could "only be relocated, whether temporarily or permanently," in accordance with the provisions of N.C. Gen. Stat. § 100-2.1, and that the County Commissioners' vote to remove the Monument was a "proscriptive action" in violation of the statute. The same day, Plaintiffs filed a separate motion for a temporary restraining order to prevent the County Commissioners "from attempting to remove, alter, disassemble, or destroy the . . . Monument[.]" On 1 November 2019, the trial court granted Plaintiffs' motion, issuing a temporary restraining order prohibiting the County Commissioners from "dismantling, removing, destroying and/or disturbing in any manner or fashion the Monument"; the order was set to expire on 8 November 2019.

Plaintiffs filed a separate motion for a preliminary injunction on 4 November 2019, requesting that the court "restrain[ ] and enjoin[ the County Commissioners] from taking affirmative action to remove or relocate the [M]onument prior to a full adjudication of the respective rights and obligations of the [p]arties[.]" However, the trial court was unable to hold a hearing on Plaintiffs' motion for a preliminary injunction until 13 November 2019, "[d]ue to other business of the [c]ourt"; consequently, the court extended its temporary restraining order until 13 November 2019.

Meanwhile, on 1 November 2019, the County Commissioners filed a motion to dismiss Plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the North

Carolina Rules of Civil Procedure. On 5 November 2019, the County Commissioners filed an amended motion to dismiss on the same grounds, asserting, *inter alia*, that the Monument belonged to the UDC and that the County had granted it a license "to erect a monument on the [Courthouse] square." The County Commissioners further asserted that Plaintiffs lacked standing to initiate the instant action under either the law of taxpayer standing or as a private right of action pursuant to N.C. Gen. Stat. § 100-2.1.

On 4 November 2019, the West Chatham Branch of the National Association for the Advancement of Colored People ("the NAACP") and Chatham for All filed a motion to intervene as third-party defendants pursuant to Rule 24 of the North Carolina Rules of Civil Procedure. That same day, they also filed a motion to dismiss Plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6), maintaining, *inter alia*, that Plaintiffs lacked standing to bring the instant action. On 13 November 2019, the trial court granted the NAACP and Chatham for All's motion to intervene.

Plaintiffs' motion for a preliminary injunction came on for hearing in Chatham County Superior Court on 13 November 2019, and was denied by the trial court's order entered on 22 November 2019. The court also determined that the temporary restraining order filed on 1 November 2019 "ha[d] expired and [wa]s of no further effect[.]"

Both motions to dismiss came on for hearing on 2 December 2019. Following the hearing, the trial court granted the motions to dismiss by order entered on 10

December 2019. The court determined that "Plaintiffs lack standing to bring this action and Plaintiffs' [c]omplaint fails to state a claim upon which relief can be granted"; having so concluded, the trial court dismissed Plaintiffs' complaint with prejudice.

Plaintiffs timely appealed.

### *Discussion*

On appeal, Plaintiffs argue (1) that the trial court erred by dismissing their complaint on the ground that Plaintiffs lacked standing, and that the court thus lacked subject-matter jurisdiction; (2) that the trial court erred by dismissing Plaintiffs' complaint with prejudice; (3) that the trial court abused its discretion by "refusing to consider the brief and affidavit tendered by Plaintiffs in opposition to [the County Commissioners'] amended motion to dismiss"; and (4) that the trial court erred by granting Chatham for All and the NAACP's motion to intervene.

I.    *Standard of Review*

Our appellate courts review "a trial court's decision to grant or deny a motion to dismiss for lack of standing using a de novo standard of [re]view, under which it views the allegations as true and the supporting record in the light most favorable to the non-moving party[.]" *United Daughters of the Confederacy*, 383 N.C. at 624, 881 S.E.2d at 43 (citation and internal quotation marks omitted).

"An appellate court considering a challenge to a trial court's decision to grant or deny a motion to dismiss for lack of subject[-]matter jurisdiction may consider

information outside the scope of the pleadings in addition to the allegations set out in the complaint." *Id.*

II.  *Analysis*

On appeal, Plaintiffs advance a number of arguments in support of their contention that they "have standing to seek a declaratory judgment determining the respective rights and obligations of the [p]arties with regard to the . . . Monument." We address these arguments separately.

A.  <u>Standing</u>

"[T]he object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated." *Perry v. Bank of Am., N.A.*, 251 N.C. App. 776, 779, 796 S.E.2d 799, 802 (2017) (citation omitted); *see also Lide v. Mears*, 231 N.C. 111, 118, 56 S.E.2d 404, 409 (1949) (explaining that declaratory judgments "declar[e] and establish[ ] the respective rights and obligations of adversary parties in cases of actual controversies without either of the litigants being first compelled to" act in a way that may result in a violation of the other party's rights or a repudiation of a party's own obligations).

A plaintiff may maintain an action pursuant to the Declaratory Judgment Act, N.C. Gen. Stat. § 1-253 *et seq.* (2021), only insofar "as it affects the civil rights, status and other relations in the present actual controversy between parties[,]" *Chadwick v. Salter*, 254 N.C. 389, 395, 119 S.E.2d 158, 162 (1961) (citation and internal quotation marks omitted). "[T]he mere filing of a declaratory judgment is not sufficient, on its

own, to grant a plaintiff standing, with it being necessary for a party to establish standing as a prerequisite for the assertion of a declaratory judgment claim[.]" *United Daughters of the Confederacy*, 383 N.C. at 629, 881 S.E.2d at 46 (citation and internal quotation marks omitted).

"Standing to sue means simply that the party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Town of Ayden v. Town of Winterville*, 143 N.C. App. 136, 140, 544 S.E.2d 821, 824 (2001) (citation and internal quotation marks omitted). "Standing, which is properly challenged by a Rule 12(b)(1) motion to dismiss, is a necessary prerequisite to a court's proper exercise of subject[-]matter jurisdiction. If a party does not have standing to bring a claim, a court has no subject[-]matter jurisdiction to hear the claim." *Wilson v. Pershing, LLC*, 253 N.C. App. 643, 650, 801 S.E.2d 150, 156 (2017) (citations and internal quotation marks omitted); *see also United Daughters of the Confederacy*, 383 N.C. at 649, 881 S.E.2d at 59 (recognizing that "standing is a necessary prerequisite to a court's proper exercise of subject[-]matter jurisdiction" (citation and internal quotation marks omitted)).

    1. *Taxpayer Standing*

Plaintiffs assert that they have taxpayer standing, giving them "the right to seek equitable and declaratory relief when governing authorities are preparing to put property dedicated to the public to an unauthorized use."[1]

It is well settled that a taxpayer may bring an action "on behalf of a public agency or political subdivision for the protection or recovery of the money or property of the agency or subdivision in instances where the proper authorities neglect or refuse to act." *Peacock v. Shinn*, 139 N.C. App. 487, 491, 533 S.E.2d 842, 845 (citation and internal quotation marks omitted), *appeal dismissed and disc. review denied*, 353 N.C. 267, 546 S.E.2d 110 (2000). However, "where a plaintiff undertakes to bring a taxpayer's suit . . . , his complaint must disclose that he is a taxpayer of the agency or subdivision," and allege facts that adequately establish either: (1) that "there has been a demand on and a refusal by the proper authorities to institute proceedings for the protection of the interests of the public agency or political subdivision[,]" or (2) that "a demand on such authorities would be useless." *United Daughters of the Confederacy*, 383 N.C. at 630–31, 881 S.E.2d at 47–48 (citations omitted).

In the present case, Plaintiffs did not make the requisite allegations to support their claim of taxpayer standing. To be sure, the complaint alleges that each

---

[1] To the extent that Plaintiffs assert the issue of associational standing as members of the UDC, Plaintiffs advance no reason or argument in support of it in their brief. Accordingly, this issue is deemed abandoned. *See* N.C.R. App. P. 28(b)(6); *see also, e.g.*, *Wilson*, 253 N.C. App. at 650, 801 S.E.2d at 156 (concluding that where an appellant's brief "does not contain any substantive arguments on [an issue presented], this issue has been abandoned").

individual Plaintiff was a taxpayer of Chatham County; nonetheless, it fails to allege that "there ha[d] been a demand on and a refusal by the proper authorities to institute proceedings for the protection of the interests of the public agency or political subdivision or that a demand on such authorities would [have] be[en] useless." *Id.* at 631, 881 S.E.2d at 47–48 (citations and internal quotation marks omitted). Because Plaintiffs failed to allege all of the required elements, they failed to establish that they had taxpayer standing. This argument is therefore overruled.

### 2. *Standing Under Section 153A-140*

Plaintiffs next argue that "Defendants must abide by the clear and unequivocal mandate of law pertaining to structures deemed to be [a] threat to public health and safety before undertaking to remove them." According to Plaintiffs, because Defendants failed to follow the provisions of N.C. Gen. Stat. § 153A-140, Plaintiffs "have been 'injuriously affected' by the course of conduct initiated by [the] County and . . . they have the right to seek redress from the courts."

Plaintiffs cite *Monroe v. City of New Bern*, 158 N.C. App. 275, 580 S.E.2d 372, *disc. review denied*, 357 N.C. 461, 586 S.E.2d 93 (2003), in support of their argument that N.C. Gen. Stat. § 153A-140 provided them with the right to notice and an opportunity to be heard before the County removed the Monument. In *Monroe*, this Court held that before a city may demolish a dwelling, the procedures outlined in

Chapter 160A, Article 19[2] require that the city provide the owner of the dwelling with notice and an opportunity to be heard. 158 N.C. App. at 278, 580 S.E.2d at 375.

We find *Monroe* instructive, in that § 160A-193—which governs the abatement of public health nuisances in cities—and § 153A-140—which governs the abatement of public health nuisances in counties—are both subject to the procedures outlined in Chapter 160D, Article 12. *Compare* N.C. Gen. Stat. § 160A-193, *with id.* § 153A-140; *see also id.* § 160D-101(c). Section 160D-1203(2), which regulates the demolition of a "dwelling" deemed "unfit for human habitation," requires that a local authority provide notice and opportunity to the owner of the dwelling before demolition. *Id.* § 160D-1203(2); *see also United Daughters of the Confederacy*, 383 N.C. at 646, 881 S.E.2d at 57. As such, a party seeking notice and opportunity to be heard regarding a dwelling's demolition must establish that the party meets the statutory definitions of "owner" or "part[y] in interest"—that is, that the party is either an owner: "the holder of the title in fee simple . . . [or a] mortgagee of record[,]" or that the party meets one of the statute's broader categories deemed "parties of interest," which

---

[2] Although Chapter 160A, Article 19 (N.C. Gen. Stat. § 160A-441 *et seq.*) has been repealed and recodified in Chapter 160D, Article 12 (N.C. Gen. Stat. § 160D-1201 *et seq.*) since our Court's decision in *Monroe*, the provisions remained largely unchanged. *See* An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State, S.L. 2019-111, 2019 N.C. Sess. Law 424; *United Daughters of the Confederacy*, 383 N.C. at 645 n.17, 881 S.E.2d at 57 n.17.

In light of Chapter 160A's recodification, as well as "the fact that the new statute is retroactively applicable," we conclude that N.C. Gen. Stat. § 160D-1201 *et seq.* governs here. *United Daughters of the Confederacy*, 383 N.C. at 645 n.17, 881 S.E.2d at 57 n.17; *see also* An Act to Complete the Consolidation of Land-Use Provisions Into One Chapter of the General Statutes, S.L. 2020-25, 2020 N.C. Sess. Law 152.

include "[a]ll individuals, associations, and corporations that have interests of record in a dwelling and any that are in possession of a dwelling." N.C. Gen. Stat. § 160D-1202(1)–(2); *see also United Daughters of the Confederacy*, 383 N.C. at 646, 881 S.E.2d at 57.

Our Supreme Court recently applied the reasoning in *Monroe* to the facts presented in *United Daughters of the Confederacy*, a case with facts quite similar to those in the case at bar. There, the plaintiff argued that the provisions of Chapter 160D, Article 12 required the city of Winston-Salem to provide the plaintiff with notice and an opportunity to be heard regarding the city's planned removal of a Confederate monument. *United Daughters of the Confederacy*, 383 N.C. at 644, 881 S.E.2d at 56. According to the plaintiff, "if it were determined to be the owner of the monument, it would necessarily follow that [the] plaintiff ha[d] standing to defend the placement of the monument on the courthouse property, as well as to invoke the arguments that the monument d[id] not constitute a public nuisance under" N.C. Gen. Stat. § 160A-193. *Id.* (internal quotation marks omitted). Our Supreme Court disagreed, concluding that because the plaintiff "did not allege in the amended complaint that it had any proprietary or contractual interest in the monument or that it ha[d] an interest of record or [wa]s in possession of the monument," the plaintiff was "simply not a member of the class of persons entitled to notice and an opportunity to be heard under" the statute. *Id.* at 646, 881 S.E.2d at 57 (citation and internal quotation marks omitted).

In the case at bar, Plaintiffs similarly failed to plead any facts that tend to establish that they had any possessory, proprietary, or contractual interest in the Monument; indeed, Plaintiffs maintain that the Monument is County property. In that Plaintiffs have not sufficiently pleaded sufficient facts to establish that they meet the statutory definitions of an "owner" or a "part[y] in interest[,]" *see* N.C. Gen. Stat. § 160D-1202(1)–(2), Plaintiffs cannot demonstrate that they are "member[s] of the class of persons entitled to notice and an opportunity to be heard under" N.C. Gen. Stat. § 153A-140. *United Daughters of the Confederacy*, 383 N.C. at 646, 881 S.E.2d at 57.

Accordingly, Plaintiffs have failed to establish that they have standing pursuant to N.C. Gen. Stat. § 153A-140.

### 3. *Standing Under Section 100-2.1*

Plaintiffs next argue that they have standing pursuant to N.C. Gen. Stat. § 100-2.1, in that the Monument is County property and is therefore subject to the removal procedures outlined in N.C. Gen. Stat. § 100-2.1. Plaintiffs maintain that by "funding and erecting" the Monument, the UDC "made a dedication of the statute to [the] County, and the [C]ounty expressly accepted that dedication"; upon its placement on County property, the Monument "became real property as a fixture[.]" Thus, argue Plaintiffs, because the Monument is County property, "any action contemplated or executed with regard to [the Monument's] location is subject to the

provisions of" N.C. Gen. Stat. § 100-2.1. In light of our Supreme Court's holding in

*United Daughters of the Confederacy*, we must disagree.

Section 100-2.1 provides the circumstances and manner under which a State-

owned "monument, memorial, or work of art" may be removed and relocated:

> (a) Approval Required. – Except as otherwise provided in subsection (b) of this section, a monument, memorial, or work of art owned by the State may not be removed, relocated, or altered in any way without the approval of the North Carolina Historical Commission.
>
> (b) Limitations on Removal. – An object of remembrance located on public property may not be permanently removed and may only be relocated, whether temporarily or permanently, under the circumstances listed in this subsection and subject to the limitations in this subsection. . . . An object of remembrance that is permanently relocated shall be relocated to a site of similar prominence, honor, visibility, availability, and access that are within the boundaries of the jurisdiction from which it was relocated. An object of remembrance may not be relocated to a museum, cemetery, or mausoleum unless it was originally placed at such a location. As used in this section, the term "object of remembrance" means a monument, memorial, plaque, statue, marker, or display of a permanent character that commemorates an event, a person, or military service that is part of North Carolina's history.

N.C. Gen. Stat. § 100-2.1(a)–(b).

Plaintiffs have advanced a private action under § 100-2.1. "A statute may

authorize a private right of action either explicitly or implicitly, though typically, a

statute allows for a private cause of action only where the legislature has expressly

provided a private cause of action within the statute." *United Daughters of the*

*Confederacy,* 383 N.C. at 637, 881 S.E.2d at 52 (citation omitted). "As a result, in the event that the legislature exercises its power to create a cause of action under a statute, the plaintiff has standing to vindicate the legal right *so long as he is in the class of persons on whom the statute confers a cause of action.*" *Id.* (citation and internal quotation marks omitted).

*United Daughters of the Confederacy* presented similar issues regarding the application of N.C. Gen. Stat. § 100-2.1 as those arising in the instant case. There, the plaintiff alleged in its complaint that (1) "members of its local chapter [of the United Daughters of the Confederacy] raised the funds necessary to design, build, and install the [Confederate] monument from private sources"; (2) the plaintiff "dedicated the monument to Forsyth County and its citizens"; and (3) "the Forsyth County Commissioners expressly permitted the monument to be placed on land which the [c]ounty owned." *Id.* at 636, 881 S.E.2d at 51. The plaintiff maintained that the monument was therefore Forsyth County property, in that the Forsyth County Commissioners accepted the plaintiff's dedication by placing the monument on public property. *Id.* The plaintiff further argued that "upon its placement on the courthouse property, the monument became a 'fixture' attached to real property and that its status did not change when the [c]ounty sold the property" to a private entity. *Id.* Thus, according to the plaintiff, it had standing to seek a declaratory judgment and a preliminary injunction against the County Commissioners pursuant to N.C. Gen. Stat. § 100-2.1. *Id.*

Our Supreme Court rejected this argument: "We are unable to identify anything in [N.C. Gen. Stat.] § 100-2.1, particularly when read in conjunction with the allegations of the amended complaint, that explicitly authorizes the assertion of a private cause of action . . . ." *Id.* at 638, 881 S.E.2d at 52 (noting "[t]he absence of explicit language authorizing the assertion of a private right of action" in the statute). Therefore, the Court concluded, N.C. Gen. Stat. § 100-2.1 did not confer "any legal rights upon [the] plaintiff sufficient to give rise to any sort of . . . valid legal claim." *Id.* at 637, 881 S.E.2d at 52.

Moreover, nor did the statute *implicitly* authorize a private right of action. Our Supreme Court reasoned that "nothing in [N.C. Gen. Stat.] § 100-2.1 requires action from a party with which that party has failed to comply"; instead, the statute "*prohibits* the removal or relocation of certain specified objects that are owned by the State or located on public property." *Id.* at 638, 881 S.E.2d at 52 (citation and internal quotation marks omitted). And "even if [N.C. Gen. Stat.] § 100-2.1 could be interpreted to implicitly authorize the assertion of a private right of action," the Court concluded, "nothing in the relevant statutory language or the allegations contained in the amended complaint suggest[ed] that [the] plaintiff would be in the class of persons on which the statute confers the right." *Id.* (citation and internal quotation marks omitted).

Finally, the Court determined that N.C. Gen. Stat. § 100-2.1 did not have "any bearing upon the proper resolution of th[e] case given the absence of any allegation

in the amended complaint that the monument [wa]s 'owned by the State.' " *Id.* at 641, 881 S.E.2d at 54. "[E]ven if the [c]ounty own[ed] the monument, that fact would not convert the monument into State property subject to" § 100-2.1(a) because "the General Assembly has specifically authorized counties to independently acquire, maintain, and dispose of real or personal property," and "the North Carolina Constitution authorizes counties and municipalities to own property independently of the State." *Id.* at 642, 881 S.E.2d at 55; *see also* N.C. Gen. Stat. §§ 153A-158, -169, -176; N.C. Const. art. V, § 2.

Here, as in *United Daughters of the Confederacy*, Plaintiffs alleged in their complaint that the Monument was property subject to § 100-2.1 because "the [M]onument was accepted as a gift" by the County, as evidenced by the fact that the Monument's "placement at the Chatham County Courthouse was specifically authorized and directed by the Chatham County Board of County Commissioners[.]" *See United Daughters of the Confederacy*, 383 N.C. at 636, 881 S.E.2d at 51. Plaintiffs also alleged that the County Commissioners "act[ed] in a manner in contravention of [their] constitutional or statutory authority" when they voted to remove the Monument in violation of the provisions of N.C. Gen. Stat. § 100-2.1. According to their complaint, Plaintiffs "have legitimate and cognizable interests in [e]nsuring that [the] County does not engage in activities or enact local legislation . . . which are unlawful[.]"

Plaintiffs argue on appeal that these allegations were sufficient to establish their standing pursuant to N.C. Gen. Stat. § 100-2.1. We are bound by precedent to disagree.

As our Supreme Court made plain in *United Daughters of the Confederacy*, N.C. Gen. Stat. § 100-2.1 does not "explicitly authorize[ ] the assertion of a private cause of action for the purpose of enforcing that statutory provision." *Id.* at 638, 881 S.E.2d at 52. Furthermore, even if N.C. Gen. Stat. § 100-2.1 implicitly authorized a private right of action, Plaintiffs' allegations, like those in *United Daughters of the Confederacy*, are inadequate to support that Plaintiffs "would be in the class of persons on which the statute confers the right." *Id.* (citation and internal quotation marks omitted); *see also Charles Stores Co. v. Tucker*, 263 N.C. 710, 717, 140 S.E.2d 370, 375 (1965) ("Only one who is in immediate danger of sustaining a direct injury from legislative action may assail the validity of such action. It is not sufficient that he has merely a general interest common to all members of the public."). Here, Plaintiffs merely alleged a general interest in lawful government action—an interest common to all members of the public.

Moreover, N.C. Gen. Stat. § 100-2.1 has no "bearing upon the proper resolution of this case given the absence of any allegation in the . . . complaint that the [M]onument is 'owned by the State.' " *United Daughters of the Confederacy*, 383 N.C. at 641, 881 S.E.2d at 54.

Therefore, as in *United Daughters of the Confederacy*, Plaintiffs failed to allege facts sufficient to assert a private right of action pursuant to N.C. Gen. Stat. § 100-2.1, and the trial court appropriately dismissed their complaint for lack of standing.

### 4. *Standing Arising out of Legal or Factual Injury*

Finally, Plaintiffs assert that they have standing because they "merely seek to defend themselves from an onslaught which they did not initiate and which raises serious questions about the ability of the government to decide for itself free of judicial review what it can do to the exclusion of the customary rule of law."

Here, Plaintiffs assert an argument nearly identical to that advanced by the plaintiff in *United Daughters of the Confederacy*—that "[t]o deny that [the UDC] does not have the right to defend itself in a court of law when it was the recipient of a clear and unequivocal attack would be to subvert accepted and well-established concepts of due process and equal protection under law." The only allegation in Plaintiffs' complaint that could be interpreted as pertaining to whether they had sustained a legal or factual injury arising from the County's conduct was that Plaintiffs "have legitimate and cognizable interests in [e]nsuring [the] County does not engage in activities or enact local legislation . . . which are unlawful[.]" However, this allegation fails to articulate how the County's actions resulted in a cognizable legal or factual injury to Plaintiffs. Furthermore, like the plaintiff in *United Daughters of the Confederacy*, Plaintiffs contended in their complaint that they dedicated the

Monument to the County, and thus, they disclaimed any "proprietary or contractual interest in the [M]onument." *Id.* at 629, 881 S.E.2d at 47.

Plaintiffs were required to allege additional facts "to demonstrate that [they] ha[d] sustained a legal or factual injury arising from [D]efendants' actions[.]" *Id.* at 629, 881 S.E.2d at 46. Because they did not do so, Plaintiffs failed to establish their standing to maintain the declaratory judgment action. *Id.*; *see also Comm. to Elect Dan Forest v. Employees Political Action Comm.*, 376 N.C. 558, 609–10, 853 S.E.2d 698, 734 (2021). Accordingly, we must reject Plaintiffs' argument.

### B. *Dismissal with Prejudice*

Plaintiffs next argue that the trial court erred by dismissing their complaint with prejudice because a "court cannot dismiss a complaint with prejudice if it has held that it lacks jurisdiction over the proceeding." We agree.

Our appellate courts have historically held that a party may challenge the plaintiff's standing to bring an action in a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g.*, *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000); *Teague v. Bayer AG*, 195 N.C. App. 18, 22, 671 S.E.2d 550, *disc. review denied*, 363 N.C. 381, ___ S.E.2d ___ (2009). This precedent "appear[ed] to rest upon the notion . . . that standing for purposes of North Carolina law requires the allegation of an 'injury in fact.'" *United Daughters of the Confederacy*, 383 N.C. at 649, 881 S.E.2d at 60. However, our Supreme Court recently rejected the view that a plaintiff must allege an "injury in fact" to establish standing,

concluding that alleging either a factual injury *or* an infringement of a legal right is sufficient to confer standing under North Carolina law. *Comm. to Elect Dan Forest*, 376 N.C. at 609, 853 S.E.2d at 734.

Accordingly, when a trial court determines that it lacks subject-matter jurisdiction over a matter because of the plaintiff's failure to establish standing, the court may not dismiss the matter with prejudice pursuant to Rule 12(b)(6). *United Daughters of the Confederacy*, 383 N.C. at 650, 881 S.E.2d at 60. Rather, in such circumstances, the matter is properly dismissed without prejudice pursuant to Rule 12(b)(1). *See id.*; *Wilson*, 253 N.C. App. at 650, 801 S.E.2d at 156; N.C. Gen. Stat. § 1A-1, Rule 12(b)(1).

In the instant case, the trial court granted Defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(6) and dismissed the complaint with prejudice. As explained above, the trial court correctly concluded that Plaintiffs had failed to allege an infringement of a factual or legal right sufficient to establish standing, and therefore, it appropriately dismissed the complaint pursuant to Rule 12(b)(1). *United Daughters of the Confederacy*, 383 N.C. at 650, 881 S.E.2d at 60. However, as in *United Daughters of the Confederacy*, having properly determined that it lacked subject-matter jurisdiction over the matter, the trial court should have dismissed the matter without prejudice pursuant to Rule 12(b)(1). *See id.* As a result, "we vacate the portion of the trial court's order dismissing the . . . complaint with prejudice and

remand this case to [Chatham County Superior Court], with instructions to dismiss the . . . complaint *without*, rather than with, prejudice." *Id.*

### C. *Refusal to Consider Plaintiffs' Untimely Served Documents*

Finally, Plaintiffs argue that the trial court "abused its discretion in refusing to consider the brief and affidavit tendered by Plaintiffs in opposition to Defendants' amended motion to dismiss." We disagree.

Rule 6 of the North Carolina Rules of Civil Procedure provides, in relevant part, that "[i]f the opposing affidavit is not served on the other parties at least two days before the hearing on the motion, the court may . . . proceed with the matter without considering the untimely served affidavit[.]" N.C. Gen. Stat. § 1A-1, Rule 6(d). Rule 5 contains a similar provision concerning the service of briefs. *See id.* § 1A-1, Rule 5(a1) ("If the brief or memorandum is not served on the other parties at least two days before the hearing on the motion, the court may . . . proceed with the matter without considering the untimely served brief or memorandum . . . .").

Here, during the hearing on Defendants' motion to dismiss, Plaintiffs' counsel offered the trial court the affidavit of Plaintiff Pugh, as well as Plaintiffs' brief opposing Defendants' motion. Counsel for Defendants informed the court that they had not received the affidavit or Plaintiffs' brief until the day of the hearing. The trial court then declined to consider the affidavit, and orally rendered its ruling from the bench without considering Plaintiffs' brief. Because Plaintiffs served their affidavit and brief on Defendants less than two days before the hearing, the trial court was

well within its discretionary authority to "proceed with the matter without considering the" documents. *Id.* §§ 1A-1, Rule 5(a1), 6(d). Therefore, Plaintiffs' argument is overruled.

## *Conclusion*

For the foregoing reasons, we conclude that the trial court appropriately determined that Plaintiffs lacked standing to initiate this action. We thus affirm in part the trial court's order dismissing Plaintiffs' complaint for lack of subject-matter jurisdiction. However, because the trial court improperly dismissed the complaint with prejudice, we vacate the order in part and remand this matter to the trial court to dismiss the complaint without prejudice. In light of our disposition, we need not address Plaintiffs' remaining argument.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

Judges FLOOD and RIGGS concur.