PAUL JEFFREY NEWTON, D/B/A NEWTON BROTHERS v. CITY OF WINSTON-SALEM

No. 8821SC188

(Filed 30 December 1988)

**Municipal Corporations § 37— city's demolition of building—failure to give owner statutory notice**

   Defendant city acted without authority in ordering the demolition of a dwelling unfit for human habitation without affording the owner notice and an opportunity to be heard in the manner required by N.C.G.S. § 160A-445, and the city was liable in damages for the value of the building at the time of demolition irrespective of whether the owner had actual notice in time to have protected his rights.

APPEAL by plaintiff from *Judge Preston Cornelius*. Judgment entered 26 October 1987 in FORSYTH County Superior Court. Heard in the Court of Appeals 30 August 1988.

   *Horton & Kummer by Hamilton C. Horton, Jr., for plaintiff appellant.*

   *Hutchins, Tyndall, Doughton & Moore by Richard Tyndall and Laurie H. Woltz for defendant appellee.*

COZORT, Judge.

The question presented in this appeal is whether defendant city is liable in damages to plaintiff for demolishing plaintiff's building without complying with the procedural requirements of N.C. Gen. Stat. §§ 160A-441 through -450. The trial court held as a matter of law that defendant had not served plaintiff with complaints and orders in accordance with § 160A-445. Nevertheless, the trial court instructed the jury that, if it found that defendant "use[d] reasonable diligence to provide actual notice to Plaintiff

. . . so that Plaintiff had timely notice to protect his rights," then plaintiff was not entitled to recover the lost value of his building. We find the trial court erred in submitting that issue to the jury.

In February of 1982 the Housing Inspection Division of defendant City of Winston-Salem (the City) received a complaint about a building located at 219 E. 10th Street in Winston-Salem. The building was owned by plaintiff, who at that time rented the building to a tenant as a residential dwelling. As a result of the complaint, the city housing inspector inspected the residence. He found eighteen violations of the City's housing code. Thereafter, the City mailed to plaintiff's business address a certified letter containing a Complaint and Notice of Hearing to show cause why the City should not declare the building an unfit building and order plaintiff to take corrective action. A return receipt signed by plaintiff's secretary showed that the letter was received. At a hearing held on 24 February 1982, the City determined that the building was unfit for human habitation. Plaintiff did not appear at the hearing. Following the hearing, a certified letter containing an order to take corrective action was mailed to plaintiff at his business address. A return receipt showed that this letter was received on 1 March 1982.

During the next months, the City inspected the building and determined that plaintiff had not taken corrective action. Sometime prior to October of 1983, the City relocated the tenant to other housing.

On 30 May 1984, more than two years after its initial order for repair had been served, the City mailed a certified letter to plaintiff at his business address informing plaintiff that the building had been found standing open and asking plaintiff to secure the property. The letter was returned "unclaimed." The housing inspector supervisor unsuccessfully attempted to contact plaintiff by telephone and in person and asked plaintiff's secretary to tell plaintiff to call him. Plaintiff did not respond to these messages.

On 11 December 1984, the city inspector found that the building had been vandalized and left standing open and "that the condition of the property had changed." Thereafter, on 13 December 1984, the inspector sent by certified mail an order to repair or demolish the dwelling. The letter was returned "unclaimed." In January of 1985, the inspector again inspected the building and

determined that it had not been repaired or demolished as ordered, and that more vandalism had taken place.

On 31 January 1985, the City mailed to plaintiff at his business address a certified letter notifying plaintiff that the Board of Aldermen would consider the property and take action against it. The letter was returned "unclaimed." At its meeting, the Board of Aldermen adopted an ordinance ordering plaintiff to demolish the building or the City would demolish it. A copy of the ordinance was mailed to plaintiff, at his business address, but this letter too was returned "unclaimed." A sign concerning the impending demolition was posted on the building. The demolition took place on 26 and 27 March 1985, and a lien for the cost of the demolition was placed on the property.

On 1 August 1986, plaintiff brought an action in trespass against the City for the demolition of his building. He sought damages in excess of $100,000 for the loss of the building and its contents and an "appropriate sum" for the loss of use of the building as a storage and carpentry facility. At trial, plaintiff maintained that he knew nothing about the City's demolition plans until after the building was destroyed. He contended that the City did not comply with the service of process provision of N.C. Gen. Stat. § 160A-445 and, therefore, that defendant's act in demolishing his building was unlawful, entitling him to damages. Defendant contended that it had substantially complied with the provision on service of process, and that plaintiff had notice of the impending demolition but failed to take steps to protect his rights, thus precluding recovery.

After presentation of the evidence, the trial court directed a verdict for plaintiff on the issue of service. However, the court then instructed the jury that if it found that the City had exercised reasonable diligence to provide plaintiff with actual notice and that plaintiff had timely notice to protect his rights, then the jury was not to consider the question of damages for the value of the building. The court further instructed the jury that the City was liable to plaintiff for its failure to salvage materials that plaintiff proved were salvageable.

The jury answered the following questions as indicated:

1. Did Defendant, City of Winston-Salem, use reasonable diligence to provide actual notice to Plaintiff of the impend-

Newton v. City of Winston-Salem

ing demolition of his building at 219 E. Tenth Street, so that Plaintiff had timely notice to protect his rights? (If the answer to No. 1 is yes, go to issue No. 3.)

ANSWER: Yes.

2. If not, what was the value of the building at 219 E. Tenth Street? (If you answer No. 2, return to the Courtroom.)

ANSWER: _____

3. Were there salvagable [sic] materials in the building at 219 E. Tenth Street? (If the answer to No. 3 is no, return to the Courtroom.)

ANSWER: Yes.

4. If so, what was the salvage value of those materials?

ANSWER: $1,845.

On appeal, plaintiff contends that the trial court erred in submitting the first issue to the jury and thus precluding recovery of the value of his building based on a finding of reasonable diligence to provide actual notice. We agree.

N.C. Gen. Stat. § 160A-441 confers upon cities and counties the power to exercise their police powers by adopting and enforcing ordinances ordering a property owner to repair, close, or demolish dwellings that are determined to be unfit for human habitation and therefore dangerous and injurious to the health and safety of the public. N.C. Gen. Stat. § 160A-441 (1988). The statute specifically states that cities and counties may exercise such powers only "in the manner herein provided." *Id.* Furthermore, "[i]t is well established that a municipal corporation has no inherent police power, but may exercise such power only to the extent that it has been conferred upon the city by statute." *Horton v. Gulledge*, 277 N.C. 353, 359, 177 S.E. 2d 885, 889 (1970), *overruled on other grounds*, 305 N.C. 520, 290 S.E. 2d 675 (1982). Finally, the power of the State itself is subject to the limitations imposed by the Constitution, which forbids arbitrary interference with the rights of property owners. *See Zopfi v. City of Wilmington*, 273 N.C. 430, 434, 160 S.E. 2d 325, 330 (1968). Therefore, the authority of the City of Winston-Salem to order the demolition of a building is limited both by the Constitution and by the enabling legislation. *Id.*

The enabling legislation provides that an ordinance adopted by a city to regulate buildings unfit for human habitation "shall contain" certain provisions, including the following:

> (3) That if, *after notice and hearing,* the public officer determines that the dwelling under consideration is unfit for human habitation, he shall state in writing his findings of fact in support of that determination and shall issue and cause to be served upon the owner thereof an order,
>
>> a. If the repair, alteration or improvement of the dwelling can be made at a reasonable cost in relation to the value of the dwelling (the ordinance of the city may fix a certain percentage of his value as being reasonable), requiring the owner, within the time specified, to repair, alter or improve the dwelling in order to render it fit for human habitation or to vacate and close the dwelling as a human habitation; *or*
>>
>> b. If the repair, alteration or improvement of the dwelling cannot be made at a reasonable cost in relation to the value of the dwelling (the ordinance of the city may fix a certain percentage of this value as being reasonable), requiring the owner, within the time specified in the order, to remove or demolish such dwelling.

N.C. Gen. Stat. § 160A-443 (1988) (emphasis added).

Subsections (4) and (5) enable the City to make repairs or demolish property if the owner fails to do so, but no repair or demolition may take place until an ordinance authorizing such action is enacted by the governing body. N.C. Gen. Stat. § 160A-443(5) (1988). However, "[n]o such ordinance shall be adopted to require demolition of a dwelling until the owner has first been given a reasonable opportunity to bring it into conformity with the housing code." *Id.*

The statute further provides the method of service of complaints and orders issued by the City:

> Complaints or orders issued by a public officer pursuant to an ordinance adopted under this Part *shall be served* upon persons either personally or by registered or certified mail. If the identities of any owners or the whereabouts of persons

are unknown and cannot be ascertained by the public officer in the exercise of reasonable diligence, and the public officer makes an affidavit to that effect, then the serving of the complaint or order upon the unknown owners or other persons may be made by publication in a newspaper having general circulation in the city . . . . When service is made by publication, a notice of the pending proceedings shall be posted in a conspicuous place on the premises thereby affected.

N.C. Gen. Stat. § 160A-445 (1988) (emphasis added).

Finally, if a dwelling is demolished by the City, the City shall sell the materials, any personal property, fixtures or appurtenances and credit the proceeds of the sale against the cost of demolition. N.C. Gen. Stat. § 160A-443(6) (1988).

In ordering and carrying out the demolition of plaintiff's property, none of these statutory requirements were followed.

The *order to repair* received by plaintiff on 1 March 1982 was issued following a properly noticed hearing which plaintiff did not attend. However, when the *order to demolish* was issued almost three years later, plaintiff had not been served with a notice of hearing at which the City would determine the appropriateness of such an order. As set out above, section (3) of § 160A-443 authorizes the City, *after notice and hearing,* to "issue and cause to be served upon the owner," an order to repair *or* an order to demolish. An order to repair is issued after a determination that repairs can be made at a reasonable cost in relation to the value of the dwelling. An order to demolish involves a different determination, namely, that the repairs *cannot* be made at a reasonable cost in relation to the value of the dwelling. These are clearly two distinct factual determinations supporting two distinct kinds of orders. In this case, the City's demolition order was issued almost three years after the City held a hearing and issued its order to repair. The demolition order was based on the building inspector's determination that "the condition of the property had changed" due to vandalism. Plaintiff was given no opportunity to be heard on this determination as required by § 160A-433(3).

As the trial court found, the City failed to comply with the service of process provision of § 160A-445. The City made no attempt to serve plaintiff personally with the demolition order, nor

did the City seek to avail itself of service by publication after exercising reasonable diligence in attempting to ascertain plaintiff's whereabouts. Statutes authorizing service by mail or publication are strictly construed and must be followed with particularity. *Hassell v. Wilson*, 301 N.C. 307, 314, 272 S.E. 2d 77, 82 (1980). Furthermore, no inference of notice may be drawn from the fact that the City's letters were returned "unclaimed." *Cf. Casey v. Barker*, 219 N.C. 465, 14 S.E. 2d 429 (1941), holding that *failure* to accept or claim mail did not import notice where the statute authorized service predicated on the *refusal* to accept or claim such mail. "Actual notice, given in any manner other than that prescribed by statute cannot supply constitutional validity to the statute or to service under it." *Distributors, Inc. v. McAndrews*, 270 N.C. 91, 94, 153 S.E. 2d 770, 772 (1967).

Finally, the City failed to sell any salvageable materials as required by § 160A-443(6). The jury awarded plaintiff $1,845.00 for salvage value. Plaintiff is not, however, limited to recovery for the lost value of these materials. The City acted without authority in ordering the demolition of plaintiff's building without affording plaintiff notice and an opportunity to be heard as required by statute. "A municipal corporation is liable for the destruction or demolition of a building as a public nuisance . . . where the City did not observe due process requirements." McQuillin, *Municipal Corporations*, § 24-561 (footnotes omitted). The City acted at its peril in failing to exercise its powers in the manner prescribed by the statute, and thus it is liable to plaintiff for any provable damages.

A jury finding of "reasonable diligence to provide actual notice . . . so that plaintiff had timely notice to protect his rights" does not insulate the City's liability or limit plaintiff's recovery. Other jurisdictions considering similar circumstances have ruled that a property owner has no duty to take affirmative steps to halt a city's threatened wrongful conduct. *See Geftos v. City of Lincoln Park*, 39 Mich. App. 644, 198 N.W. 2d 169, 175 (1972); *Leppo v. City of Petaluma*, 20 Cal. App. 3d 711, 97 Cal. Rptr. 840, 842-43 (1971); *Solly v. City of Toledo*, 7 Ohio St. 2d 16, 218 N.E. 2d 463, 467 (1966); *Moll Co. v. Holstner*, 252 Ky. 249, 67 S.W. 2d 1 (1934). Thus, proof of actual notice is irrelevant to plaintiff's right to recover damages. The trial court erred in instructing the jury that it could find that the defendant used reasonable

diligence to provide actual notice and thus absolve the defendant of its liability for damages to plaintiff, even though the defendant failed to serve the plaintiff as required by law before demolishing the building.

At the conclusion of the evidence, the trial court granted plaintiff's motion for directed verdict on the issue of service. Defendant did not appeal from this ruling. Thus, defendant's failure to comply with the statutory requirement of service of the complaint and order has been conclusively established. The only issue left to be resolved is whether the plaintiff is entitled to damages for the loss of the value of the building as a result of the demolition. The cause must be remanded for the jury to determine the value of the building at the time of demolition. Any value so found by the jury which exceeds the $1,845.00 value of salvageable materials already found by the jury and awarded to the plaintiff as damages is to be reduced by $1,845.00.

The judgment of the trial court is vacated and the cause remanded for a new trial solely on the issue of damages.

Judgment vacated; new trial on damages.

Judges JOHNSON and PARKER concur.