BILLY G. PATTERSON, PEARNELL PATTERSON, and KEITH PATTERSON, Plaintiffs
v. THE CITY OF GASTONIA, Defendant

No. COA11-520

(Filed 1 May 2012)

**1. Constitutional Law—due process claim—not barred by governmental immunity—amended complaint—no prejudice**

The trial court erred by dismissing plaintiffs' cause of action to the extent it asserted a claim for violation of due process under the North Carolina Constitution as the claims were not barred by governmental immunity. However, because the court subsequently allowed plaintiffs to amend their complaint to reassert their due process claims, plaintiffs were not prejudiced by the error.

**2. Constitutional Law—due process claims—no service on plaintiff required—adequate state remedy existed**

The trial court did not err by granting defendant's motion for summary judgment as to plaintiffs' due process claims. Defendant was not required to serve notices, complaints, and orders regarding the demolition of plaintiffs' mobile homes on plaintiff Keith Patterson as his interest in the mobile homes did not appear anywhere in the public record. Furthermore, plaintiffs' claim that they were denied due process under the North Carolina Constitution when defendant failed to give them notice of a City Council meeting and an opportunity to be heard before the passing of the ordinance of demolition was barred as an adequate remedy existed at state law to redress their alleged injury.

**3. Appeal and Error—preservation of issues—sovereign immunity—bar to tort claims—failure to cite authority**

The trial court did not err in a case involving the demolition of plaintiffs' mobile homes by concluding that plaintiffs' tort claims

for conversion, trespass to chattels, and trespass were barred by sovereign immunity. Plaintiffs failed to cite cases addressing sovereign immunity, instead relying on cases addressing constitutional claims or public official immunity, even though plaintiffs sued only the City of Gastonia and not any public officials.

## 4. Eminent Domain—inverse condemnation—no authority that actions constituted a taking

The trial court did not err in granting summary judgment as to plaintiffs' claim for inverse condemnation. Plaintiffs cited no authority, and the Court of Appeals found none, suggesting that defendant City's entry into a leasehold in accordance with its authority under the City's Minimum Housing Code and the enabling legislation constituted a taking within the meaning of inverse condemnation.

Appeal by plaintiffs from orders entered 16 January 2009, 23 November 2009, and 9 December 2010 by Judges David S. Cayer, Timothy L. Patti, and W. Robert Bell respectively in Gaston County Superior Court. Heard in the Court of Appeals 10 October 2011.

*Gray Layton Kersh Solomon Furr & Smith, P.A., by Michael L. Carpenter and William E. Moore, Jr., for plaintiffs-appellants.*

*Stott, Hollowell, Palmer & Windham, L.L.P., by Martha Raymond Thompson and Lindsay E. Willis, for defendant-appellee.*

GEER, Judge.

Plaintiffs Billy G. Patterson, his wife Pearnell Patterson, and their son Keith Patterson ("the Pattersons") appeal from the trial court's orders granting the City of Gastonia's motions to dismiss and for summary judgment. The Pattersons primarily contend on appeal that the City's actions relating to demolition of the Pattersons' mobile homes violated their due process rights under the North Carolina Constitution. As we find that the Pattersons had an adequate alternative remedy at law for redress of their claim, their direct state constitutional claim was barred, and the trial court properly granted summary judgment.

### Facts

Mr. and Mrs. Patterson were the record owners of 21 mobile homes located at Patterson Circle in Gastonia, North Carolina. Their

son, Keith Patterson, also claims an ownership interest in the mobile homes. The Pattersons leased the property on which the homes were located.

The City opened code enforcement cases on those 21 mobile homes in January 2006. In its code enforcement action, the City relied upon the procedures adopted in the City's Minimum Housing Code pursuant to N.C. Gen. Stat. § 160A-443 (2011). Section 160A-443 authorizes municipalities to adopt "ordinances relating to dwellings within [a] city's territorial jurisdiction that are unfit for human habitation." The statute requires that the City designate a public officer to exercise the powers described. N.C. Gen. Stat. § 160A-443(1). The statute further provides in pertinent part that "whenever it appears to the public officer (on his own motion) that any dwelling is unfit for human habitation, the public officer shall, if his preliminary investigation discloses a basis for such charges, issue and cause to be served upon the owner of and parties in interest in such dwellings a complaint stating the charges in that respect and containing a notice that a hearing will be held before the public officer (or his designated agent) . . . ." N.C. Gen. Stat. § 160A-443(2). That notice must contain notice of the time and place of the hearing to be held before the public officer. *Id.*

Following the hearing, if "the public officer determines that the dwelling under consideration is unfit for human habitation, he shall state in writing his findings of fact in support of that determination and shall issue and cause to be served upon the owner thereof an order[.]" N.C. Gen. Stat. § 160A-443(3). That order may provide either for (1) demolition of the property or (2) repair of the property. N.C. Gen. Stat. § 160A-443(3)(a), (b). In order to decide if an order for repair should issue, the public officer must determine whether "the repair, alteration or improvement of the dwelling can be made at a reasonable cost in relation to the value of the dwelling"—the City is authorized to fix in advance "a certain percentage of [the property's] value as being reasonable[.]" N.C. Gen. Stat. § 160A-443(3)(a).

The City of Gastonia's Minimum Housing Code mirrors these provisions and sets the reasonable value for purposes of an order of demolition at 50% of the value of the dwelling. Gastonia, N.C., Code of Ordinances ch. 16, art. V, §§ 16-127(13), 16-132(a), (b) (1982). However, the City's Code also provides an additional opportunity for the owner to repair the dwelling apart from that set out in the enabling legislation. Under the Code, if the chief code enforcement officer determines that the building is "dilapidated," then he or she

must make written findings of fact and "shall issue" an order requiring the owner to "vacate, close and remove or demolish" the building within a specified time. *Id.* at § 16-132(b)(2). Within 10 days from the date of that "order determining that the building is dilapidated, the owner may notify the chief code enforcement officer in writing of his intent to make such repairs or alterations to said dwelling." *Id.* at § 16-132(b)(3). After receipt of such a notice, the chief code enforcement officer is required to issue "a supplemental order" directing the owner to bring the dwelling into a minimum standard of fitness. *Id.* The order must provide a reasonable time for the repairs to be completed, which may be no less than 30 days and no more than 90 days. *Id.*

N.C. Gen. Stat. § 160A-446(c) (2011) provides for an appeal to a housing appeals board from "any decision or order of the public officer . . . by any person aggrieved thereby" within 10 days of the rendering or service of the order. Consistent with the statute, the City of Gastonia's ordinance provides for an appeal to the Board of Adjustment from "any decision or order of the chief code enforcement officer." Gastonia, N.C., Code of Ordinances ch. 16, art. V, § 16-132(d). An appeal from an order requiring the aggrieved person to do any act suspends the effect of the chief code enforcement officer's order. *Id.*

N.C. Gen. Stat. § 160A-446(f) further provides that "[a]ny person aggrieved by an order issued by the public officer or a decision rendered by the board may petition the superior court for an injunction restraining the public officer from carrying out the order or decision and the court may, upon such petition, issue a temporary injunction restraining the public officer pending a final disposition of the cause." The City of Gastonia's code likewise allows "[a]ny person aggrieved by an order issued by the chief code enforcement officer or a decision rendered by the board . . . to petition the superior court for a temporary injunction, restraining the chief code enforcement officer pending a final disposition of the cause, as provided by G.S. 160A-446(f)." Gastonia, N.C., Code of Ordinances ch. 16, art. V, § 16-132(e).

In this case, following an investigation, the chief code enforcement officer issued an emergency notice of violations for the Pattersons' mobile homes and ordered the Pattersons to bring the mobile homes into compliance with the City Code within 48 hours of receipt of the notices. On 27 January 2006, the Pattersons received Reports and Requests for Corrective Action which advised them that the code violations with which they were charged had to be corrected

within 30 days. In January and February 2006, Mr. and Mrs. Patterson obtained building permits for the mobile homes listing themselves as the owners of the homes.

On 6 March 2006, the City served complaints and notices of hearing by the United States mail, return receipt requested, alleging that the Pattersons' dwellings were not in compliance with the City's building code and setting a hearing before the chief code enforcement officer for 29 March 2006. Billy Patterson attended the 29 March 2006 hearing before the chief code enforcement officer. Following the 29 March 2006 hearing, the chief code enforcement officer issued an order to demolish for each of the mobile homes owned by the Pattersons. Those orders, however, granted the Pattersons the option to elect, within 10 days from the date of the order to demolish, to bring the dwellings into compliance with the building code by submitting a written notice of intent to repair the property.

On 7 April 2006, Billy Patterson signed notices of intent to repair all 21 mobile homes. The chief code enforcement officer then issued supplemental orders to repair, giving the Pattersons until 7 May 2006 to complete the ordered repairs. Those supplemental orders were served on Mr. and Mrs. Patterson by the United States mail, return receipt requested. The return receipt was signed by plaintiff Keith Patterson. When none of the mobile homes were completely repaired by 6 June 2006, the City Council, via its consent agenda, issued orders to demolish all of the mobile homes that were not in compliance with the City's Minimum Housing Code.

On 26 July 2006, Dee Dee Gillis, chief code enforcement officer for the City of Gastonia, sent a letter to Mr. and Mrs. Patterson outlining what actions and documentation would be necessary for the Pattersons to prove that the mobile homes had been brought into compliance with the Housing Code. On 10 November 2006, the City of Gastonia tore down six of the 21 mobile homes at issue.[1] Following the City's demolition of those six mobile homes, the Pattersons sold one of the mobile homes. Dr. Anthony, the owner of the land on which the mobile homes sat, had the remaining mobile homes torn down because he did not want to have further difficulties with the City.

---

1. We note that while the affidavit of the chief code enforcement officer for the City of Gastonia states that the only mobile homes demolished by the City were six mobile homes torn down in November 2006, plaintiffs assert in their brief on appeal that the City demolished certain of the mobile homes in June 2006 and others were demolished in August and September 2006. Plaintiffs' claim does not appear to be supported by the record, although the specific date of demolition is not germane to our consideration of the issues in the case.

On 26 June 2008, the Pattersons filed suit against the City of Gastonia alleging wrongful demolition on the basis of the City's having violated their common law and constitutional due process rights, inverse condemnation, trespass, and conversion/trespass to chattels. The City filed two motions to dismiss the complaint. The first motion contended that the complaint should be dismissed under North Carolina Rule of Civil Procedure 12(b)(1) and (2) based on sovereign immunity, while the second motion, based on Rule 12(b)(6), asserted that the Pattersons had failed to state a claim for relief.

On 16 January 2009, the trial court entered an order granting the first motion to dismiss after finding that the City had not waived its sovereign immunity. The court dismissed "the causes of action in the Complaint sounding in tort, entitled 'Wrongful Demolition', 'Conversion/ Trespass to Chattels' [sic], and 'Trespass', constituting the First, Third and Fourth Causes of Action, respectively." The court denied the motion to dismiss the second cause of action for "Inverse Condemnation."

On 16 October 2009, the City filed a motion for summary judgment on the Pattersons' inverse condemnation claim on the grounds that (1) plaintiffs' had not exhausted their administrative remedies, (2) plaintiffs could not prove facts constituting an inverse condemnation, and (3) the claim was barred by the statute of limitations. On 22 October 2009, the Pattersons filed a motion to amend their complaint to reallege their due process claims based on the intervening decision of *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 678 S.E.2d 351 (2009).

Both the City's motion for summary judgment and the Pattersons' motion to amend were heard on 26 October 2009. The trial court granted defendant's motion for summary judgment as to the inverse condemnation claim, but allowed the Pattersons' motion to amend their complaint to reassert their due process claims under the North Carolina Constitution.

On 10 December 2009, the Pattersons filed their amended complaint, alleging that the Pattersons had not been given any notice of the 6 June 2006 hearing at which the City determined that their property was to be demolished and were not, therefore, given an opportunity to present evidence that they "had not been given an adequate opportunity to repair the subject dwellings." The amended complaint further alleged that "[e]ven though Plaintiff Keith Patterson was a co-owner of

the subject property, he was never given notice by the Defendant or offered an opportunity to be heard prior to the demolition."

On 18 November 2010, the City filed a second motion for summary judgment asserting that there was no genuine issue of material fact as to the remaining due process claims. On 9 December 2010, the trial court entered an order granting the City's summary judgment motion. The trial court concluded that the Pattersons had an adequate remedy at law that barred their constitutional claim and that plaintiffs Billy G. Patterson and Pearnell Patterson were, in any event, afforded due process. As for Keith Patterson, the trial court concluded that he was not entitled to notice as he had no ownership interest in the property that had been recorded.

The Pattersons timely appealed to this Court from the trial court's orders granting the City's motions to dismiss pursuant to Rules 12(b)(1), (2), and (6) and from the orders granting the City's motions for summary judgment.

I

[1] The Pattersons first contend that the trial court erred in ruling in the 16 January 2009 order that their due process claims—labeled "Wrongful Demolition"—were barred by governmental immunity. The trial court dismissed this cause of action as "sounding in tort." The complaint, however, alleged that "[d]efendant demolished Plaintiffs' property without affording Plaintiffs adequate due process under the common law *and Constitution of the State of North Carolina.*"(Emphasis added.)

In *Corum v. Univ. of N.C.*, 330 N.C. 761, 785-86, 413 S.E.2d 276, 291 (1992), our Supreme Court held that sovereign immunity does not bar state constitutional claims: "The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights." The trial court, therefore, erred in dismissing the first cause of action to the extent it asserted a claim for violation of due process under the North Carolina Constitution. However, because the court subsequently allowed the Pattersons to amend their complaint to reassert their due process claims, they were not prejudiced by the error.

II

[2] The Pattersons next contend that the trial court erred in granting the City's motion for summary judgment as to their due process claims. Plaintiff Keith Patterson argues individually that he was given

no notice at all of any of the proceedings relating to the demolition of the mobile homes. All of the Pattersons contend that they were denied notice and an opportunity to be heard prior to the City's passing, on 6 June 2006, an ordinance directing that the Pattersons' mobile homes be demolished. The Pattersons argue that the demolition under these circumstances constituted both a procedural due process and a substantive due process violation.

A. Failure to Serve Keith Patterson with Notice

Keith Patterson was not served with the notices, complaints, and orders sent to Billy G. and Pearnell Patterson. Plaintiffs argue that the failure to notify him violated the enabling statutes—N.C. Gen. Stat. § 160A-442 (2011) and N.C. Gen. Stat. § 160A-443(2)—and denied him due process. The City responds that because Keith Patterson was not a record owner of the mobile homes, they had no duty to serve him.

Section 160A–443 sets forth the provisions that a city must include in any ordinances adopted pursuant to its power to regulate minimum housing standards. Under N.C. Gen. Stat. § 160A-443(2), the initial complaint must be served on "the owner of and parties in interest" of the dwellings at issue. Subsequent provisions in N.C. Gen. Stat. § 160A-443 refer simply to "the owner." N.C. Gen. Stat. § 160A–442(4) (emphasis added) defines "owner": " 'Owner' means the holder of the title in fee simple and every mortgagee *of record.*" On the other hand, " '[p]arties in interest' means all individuals, associations and corporations who have interests *of record* in a dwelling and any who are in possession thereof." N.C. Gen. Stat. § 160A–442(5) (emphasis added).

The Pattersons do not contend that Keith Patterson was a record owner of the property. Instead, the Pattersons assert that "[a]t no time did Plaintiffs ever inform the City that Keith Patterson was not a co-owner of the dwellings. . . . The City knew or should have known that Keith Patterson was a co-owner of the dwellings and would have been privy to that fact through numerous conversations with the lessor of the real property and seller of the dwellings."

The Pattersons argue that "of record" in N.C. Gen. Stat. § 160A-442(4) modifies only "mortgagee" and not "the holder of the title in fee simple." This construction of the definition of "owner" is not consistent with the definition of "parties in interest," which also is limited only to those who have an interest "of record." It is a " 'fundamental rule of statutory construction that statutes in pari materia, and all parts thereof, should be construed together and compared with each other.' " *Martin v. .N.C. Dep't of Health & Human*

*Servs.*, 194 N.C. App. 716, 719, 670 S.E.2d 629, 632 (2009) (quoting *Redevelopment Comm'n of Greensboro v. Sec. Nat'l Bank of Greensboro*, 252 N.C. 595, 610, 114 S.E.2d 688, 698 (1960)). We see no reasonable basis for concluding that the General Assembly would limit "parties in interest" and "mortgagee[s]" to those "of record" but would not have the same limitation for holders of title in fee simple. Indeed, *Lawyer v. City of Elizabeth City N.C.*, 199 N.C. App. 304, 308, 681 S.E.2d 415, 418 (2009), relied upon by plaintiffs, appears to construe the statutes as referring to owners of record.

In *Lawyer*, this Court reversed a grant of summary judgment because "reasonable minds could differ as to whether the steps taken by defendants [to ascertain to whom notice should be sent] were sufficient." *Id.* at 309, 681 S.E.2d at 418. The plaintiffs in *Lawyer* had purchased the house and property at a sheriff's sale, but the sheriff's deed was not filed until after the house was demolished. *Id.* at 305, 681 S.E.2d at 416. The prior owners remained listed by the tax office as the "owners of the property" and, therefore, received the City's notices of condemnation. *Id.* The prior owners then sent a letter indicating that they no longer owned the property because it had been sold at auction. When the City inquired of the tax office and the register of deeds, it was assured that the prior owners were the owners of the property. *Id.*

In concluding that issues of fact existed, this Court noted that while "[n]o party presented evidence as to what the appropriate standard of care under the circumstances would be[,] [h]ad the City engaged an attorney to conduct a title search, including all 'out' conveyances, the attorney should have discovered the unrecorded sheriff's deed." *Id.* at 308, 681 S.E.2d at 418. The Court could not, however, determine whether the City had a duty to do so. *Id.* We read *Lawyer* as holding that there was a genuine issue of material fact as to whether the plaintiffs were, in fact, an owner of record under the circumstances of that case.

In support of their contention that the City was required to conduct an investigation to identify even those owners not of record, the Pattersons also cite *Farmers Bank of Sunbury v. City of Elizabeth City*, 54 N.C. App. 110, 282 S.E.2d 580 (1981). In *Farmers Bank*, the plaintiff bank had entered into a promissory note with the record owners of the property that was secured with a deed of trust on that property. *Id.* at 111, 282 S.E.2d at 581. That deed of trust was in fact recorded and included the name of the trustee although there was no reference to the bank. *Id.* at 115, 282 S.E.2d at 583. The deed of trust

did not, however, include the trustee's address. *Id.* This Court reversed entry of summary judgment in favor of the defendant City and enforcement officer because the defendants had not specifically identified what steps, if any, they had taken to ascertain the identity and whereabouts of the trustee or other interested parties apart from the record homeowners. *Id.* at 115-16, 282 S.E.2d at 584.

In short, in *Lawyer*, there was evidence that the plaintiffs' ownership could have been uncovered through a title search, giving rise to issues of fact regarding whether they were owners of record. In contrast, in *Farmers Bank*, the existence of the deed of trust was a matter of public record, but there was a question whether the defendants could have with reasonable diligence located the trustee and the bank based on the recorded deed of trust. Neither case suggests that a city has a duty to investigate interests not identifiable through a search of the public record.

Here, the Pattersons have presented no evidence that Keith Patterson's interest in the mobile homes appeared anywhere in the public record. Instead, they contend that the City should have gone beyond a public record search and conducted an investigation to uncover whether there might have been owners other than those appearing of record. Neither the statute nor the case law imposes this duty on a city. Under the circumstances of this case, the trial court properly granted summary judgment on Keith Patterson's individual due process claim.

B.  Failure to Give Notice as to June 2006 Ordinance

We next turn to plaintiffs' argument that they were denied due process under the North Carolina Constitution when the City failed to give them notice of the June 2006 City Council meeting and an opportunity to be heard before the passing of the ordinance of demolition. In *Corum*, 330 N.C. at 782, 413 S.E.2d at 289, our Supreme Court held that "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." Therefore, in order for plaintiffs to proceed under the state constitution, they must establish that they lacked an adequate alternative state remedy.

An alternative remedy is adequate when "a plaintiff [has] at least the opportunity to enter the courthouse doors and present his claim." *Craig*, 363 N.C. at 340, 678 S.E.2d at 355. Phrased differently, "an adequate remedy must provide the possibility of relief under the circumstances." *Id.*

In *Copper v. Denlinger*, 363 N.C. 784, 789, 688 S.E.2d 426, 429 (2010), our Supreme Court held that "an adequate remedy exist[ed] at state law to redress the alleged" due process injury when a statute granted a student the right to appeal first to the School Board and then to superior court from disciplinary decisions. The Supreme Court affirmed an order granting a motion to dismiss the state constitutional due process claim when "the complaint contain[ed] no allegations suggesting that the student was somehow barred from the doors of either the courthouse or the Board. Nor [did] the complaint allege that he exhausted his administrative remedies, or even that it would have been futile to attempt to appeal his suspension to the Board." *Id.* The Court concluded: "Thus, under our holdings in both *Corum* and *Craig*, an adequate remedy exists at state law to redress the alleged injury, and this direct constitutional claim is barred." *Id.*

*Copper* controls our decision in this case. The Pattersons' amended complaint alleged that the City violated their due process rights by failing to give them notice of the 6 June 2006 City Council hearing and failing to give them an opportunity to present evidence that they "had not been given an adequate opportunity to repair the subject dwellings." The Pattersons, however, had available to them the right to appeal to the City's Board of Adjustment and the right to seek injunctive relief in superior court—both remedies that would have redressed any inadequacy in the time allowed to repair their mobile homes.

In response to the chief code enforcement officer's order that the mobile homes be demolished, the Pattersons chose, on 7 April 2006, to sign a notice of intent to repair as allowed by the City's Code. The chief code enforcement officer then issued a supplemental order requiring that the premises be repaired by 7 May 2006. The order specifically warned that a failure to complete the repairs by that date would render the supplemental order void, and the City would pursue further remedies including demolition of the premises.

Instead of signing an intent to repair, the Pattersons could have chosen to appeal the initial order of the chief code enforcement officer requiring demolition. Although they chose the alternative route of repair, upon receipt of the supplemental order with its 7 May 2006 deadline, the Pattersons could have appealed to the Gastonia Board of Adjustment on the grounds that they needed additional repair time. *See* N.C. Gen. Stat. § 160A-446(c) (providing for appeal to housing appeals board from "any decision or order of the public officer . . . by

any person aggrieved thereby"); *Gastonia*, N.C., Code of Ordinances ch. 16, art. V, § 16-132(d) (allowing appeal to Board of Adjustment from "any decision or order of the chief code enforcement officer" within 10 days of issuance or service of order). That appeal would also have had the effect of suspending the chief code enforcement officer's order. The Pattersons would have had the right to seek review of the Board's decision by way of a petition for writ of certiorari filed with the superior court. N.C. Gen. Stat. § 160A-446(e).

In addition, or alternatively, under N.C. Gen. Stat. § 160A-446(f), if the Pattersons believed that the time allowed for repair was inadequate, they could have "petition[ed] the superior court for an injunction restraining the public officer from carrying out the order or decision and the court [could], upon such petition, issue a temporary injunction restraining the public officer pending a final disposition of the cause." *See also* Gastonia, N.C., Code of Ordinances ch. 16, art. V, § 16-132(e) (providing that "[a]ny person aggrieved by an order issued by the chief code enforcement officer or a decision rendered by the board" may petition superior court for temporary injunction restraining chief code enforcement officer).

Thus, the Pattersons had administrative appeals and the right to seek relief in superior court to bar the demolition of their mobile homes—remedies that would have allowed them to present evidence that they had not been given enough time to repair their property, precisely the process they claim they were denied. Further, the Pattersons claim that given more time, they would have performed their acknowledged duty to bring their property into compliance with the City's Minimum Housing Code. The administrative remedies and petition for injunctive relief could have provided the necessary additional time. Plaintiffs provide no explanation why they did not pursue these remedies and make no argument that pursuit of the remedies would have been futile. Consequently, under *Copper*, an adequate remedy existed for the Pattersons at state law to redress their alleged injury, and their direct constitutional claims are, therefore, barred.

The Pattersons, however, point to *Wiggins v. City of Monroe*, 73 N.C. App. 44, 326 S.E.2d 39 (1985), in which this Court reversed summary judgment entered in favor of the City even though the plaintiffs had not attempted to avoid demolition of their house by pursuing their administrative remedies. *Wiggins* predates *Corum* and does not specifically address state constitutional claims.

Nevertheless, in *Wiggins,* the chief building inspector had—as authorized by the City—directed the plaintiffs that the City would allow them to avoid demolition if they began repairs on the house within 10 days and completed the repairs within 60 days. *Id.* at 46, 326 S.E.2d at 41. Although the plaintiffs began their repairs within the 10-day time period, the City demolished the house 13 days into the 60-day repair period. *Id.* This Court held that although the chief building inspector had the "legal right initially to pursue either remedy—repair or demolition—he could not abandon the chosen remedy—the reparations—in midstream." *Id.* at 48, 326 S.E.2d at 42. "Once the alternate remedy [of repair was] elected, it [could not] be arbitrarily withdrawn." *Id.,* 326 S.E.2d at 43.

*Wiggins* stands in stark contrast with this case. Here, the full 60-day period allowed for repair had elapsed without the Pattersons having completed the repairs. The supplemental order provided that if the Pattersons did not comply with the deadline, then their mobile homes would be demolished. The Chief Code Enforcement Officer's July letter did not change the deadline. As a result, unlike the City in *Wiggins,* the City of Gastonia did not withdraw the repair remedy in mid-stream. It simply enforced its deadline. While the Pattersons had remedies they could have pursued to obtain an extension of that deadline, they chose not to do so. *Wiggins* does not provide a basis for reversing summary judgment on the Pattersons' constitutional claims.

The Pattersons further argue that the administrative remedies were immaterial because the City Council was required to conduct an evidentiary hearing prior to passing the ordinance ordering demolition and that the failure to do so violated due process. The sole authority cited by the Pattersons is N.C. Gen. Stat. § 160A-443(5), which provides:

> That, if the owner fails to comply with an order to remove or demolish the dwelling, the public officer may cause such dwelling to be removed or demolished. The duties of the public officer set forth in this subdivision shall not be exercised until the governing body shall have by ordinance ordered the public officer to proceed to effectuate the purpose of this Article with respect to the particular property or properties which the public officer shall have found to be unfit for human habitation and which property or properties shall be described in the ordinance. *No such ordinance shall be adopted to require demolition of a dwelling until the owner has first*

*been given a reasonable opportunity to bring it into confor-mity with the housing code.* This ordinance shall be recorded in the office of the register of deeds in the county wherein the property or properties are located and shall be indexed in the name of the property owner in the grantor index.

(Emphasis added.) Plaintiffs argue that the italicized language requires that the City Council "make a finding that a property owner has been given a reasonable opportunity to repair the dwelling before the ordinance to demolish can be issued."

Nothing in N.C. Gen. Stat. § 160A-443(5) requires that the City Council make any findings or conduct an evidentiary hearing. Plaintiffs' argument would require that we rewrite the statute to read: "No such ordinance shall be adopted to require demolition of a dwelling until [the governing body has made a finding that] the owner has first been given a reasonable opportunity to bring it into confor-mity with the housing code." It is well established, however, that "[w]e have no power to add to or subtract from the language of the statute." *Ferguson v. Riddle*, 233 N.C. 54, 57, 62 S.E.2d 525, 528 (1950). The statute requires that the property owner be given a rea-sonable opportunity to repair the property; it does not require that the City Council conduct an evidentiary hearing and make a finding that the owner received the reasonable opportunity.

As the statute states and this Court noted in *Newton v. City of Winston-Salem*, 92 N.C. App. 446, 451, 374 S.E.2d 488, 492 (1988), the factual determinations are made in a hearing before the public officer. In *Newton*, the Court found that the plaintiff had no opportunity to be heard on the determination that a dwelling should be demolished because the hearing for which the plaintiff received notice involved an order to repair and not an order to demolish. *Id.* The demolition order was based only on the building inspector's determination with-out benefit of a hearing, that the condition of the property had changed due to vandalism. *Id.*

Here, the Chief Code Enforcement Officer issued an order for demolition after a hearing at which Billy Patterson appeared. The officer made the finding that repair of the "dwelling [could not] be made at a reasonable cost in relation to the value of the dwelling" under N.C. Gen. Stat. § 160A-443(3)(b). Thus, in contrast to *Newton*, the Pattersons in this case were given an opportunity to be heard on the fundamental question regarding whether "the repairs *cannot* be

made at a reasonable cost in relation to the value of the dwelling." *Newton*, 92 N.C. App. at 451, 374 S.E.2d at 492.

If plaintiffs disagreed with that determination or, upon electing to attempt to repair the properties, believed they had not been given a long enough repair period, then plaintiffs had adequate alternative state remedies they could, but did not, pursue. The trial court, therefore, properly entered summary judgment in favor of the City on the Pattersons' state constitutional claims.[2]

## III

**[1]** With respect to their tort claims for conversion, trespass to chattels, and trespass, the Pattersons contend that the trial court should not have found them barred by sovereign immunity. It is, however, "a fundamental rule that sovereign immunity renders this state, including counties and municipal corporations herein, immune from suit absent express consent to be sued or waiver of the right of sovereign immunity." *Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 246 (2001).

A city may waive sovereign immunity by purchase of insurance:

> (a) Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance.

N.C. Gen. Stat. § 160A-485(a) (2011). Sovereign immunity is not waived if the municipality's insurance excludes the claim from coverage. *See Doe v. Jenkins*, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001) ("[B]ecause the insurance policy does not indemnify defendant against the negligent acts alleged in plaintiff's complaint, defendant has not waived its sovereign immunity . . . .").

---

2. In their reply brief, plaintiffs also contend that the City was required to issue subsequent orders to demolish following the supplemental orders to repair, citing N.C. Gen. Stat. § 160A-443(5a). This contention was not the basis of the due process claims as alleged in the amended complaint and, therefore, is not properly before this Court.

The Pattersons do not address whether their claims are covered or excluded by the City's insurance coverage. Instead, the Pattersons seem to argue that, regardless of any absence of insurance, the City waived sovereign immunity by failing to follow the procedures in its Code. Although the Pattersons have not demonstrated that the City failed to follow proper procedures, the Pattersons, in any event, have not cited cases addressing sovereign immunity, but rather have relied on cases addressing constitutional claims or public official immunity even though the Pattersons sued only the City and not any public officials.[3] The Pattersons have not, therefore, identified any error in the trial court's decision that sovereign immunity barred their claims for conversion, trespass to chattels, and trespass to real property.

IV

[4] Finally, the Pattersons contend that the trial court improperly granted summary judgment as to their claim for inverse condemnation. The Pattersons have acknowledged in their brief, however, that they cannot bring an inverse condemnation claim for the loss of mobile homes because mobile homes are considered personal property. *See Hensley v. Ray's Motor Co. of Forest City, Inc.*, 158 N.C. App. 261, 264, 580 S.E.2d 721, 723 (2003) (observing that "[t]raditionally, the law treats a mobile home not as an improvement to real property but as a good, defined and controlled by the UCC as something 'movable at the time of identification to the contract for sale . . . .'" (quoting N.C. Gen. Stat. § 25-2-105(1) (2001))); *City of Durham v. Woo*, 129 N.C. App. 183, 191, 497 S.E.2d 457, 462 (1998) ("This definition clearly indicates that for purposes of condemnation, 'property' is limited to interests in real property, and does not include personal property.").

The Pattersons nonetheless argue that the City's unauthorized entry onto the property they leased supported a claim for inverse condemnation. In an inverse condemnation action, a plaintiff must show:

> (1) a taking (2) of private property (3) for a public use or purpose. Although an actual occupation of the land, dispossession of the landowner, or physical touching of the land is not nec-

---

3. Sovereign immunity means that "a subordinate division of the state, or agency exercising statutory governmental functions like a city administrative school unit, may be sued only when and as authorized by statute." *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952). Whereas public official immunity provides that: "[A] public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Id.* at 7, 68 S.E.2d at 787.

essary, a taking of private property requires 'a substantial interference with elemental rights growing out of the ownership of the property.' A plaintiff must show an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental.

*Adams Outdoor Adver. of Charlotte v. N.C. Dep't of Transp.*, 112 N.C. App. 120, 122, 434 S.E.2d 666, 667 (1993) (internal citations omitted) (quoting *Long v. City of Charlotte*, 306 N.C. 187, 199, 293 S.E.2d 101, 109 (1982)).

The Pattersons cite no authority and we have found none suggesting that the City's entry onto a leasehold in accordance with its authority under the City's Minimum Housing Code and the enabling legislation constitutes a taking within the meaning of inverse condemnation. The trial court, therefore, properly granted summary judgment on plaintiffs' inverse condemnation claim.

Affirmed.

Chief Judge MARTIN and Judge STROUD concur.