STEPHENS, Judge.
Factual and Procedural Background
This appeal arises from an order of summary judgment in favor of the City of Asheville and several Asheville public officials on claims alleging malicious prosecution, conspiracy, and various constitutional violations brought by a former city employee. Plaintiff Lisa J. Richmond was hired as director of human resources ("HR") for Asheville in 2006. In her HR role, Richmond became involved in the submission of paperwork to effectuate the 2008 retirement of Linda Clark, a secretary with the Asheville Police Department ("APD"). Clark had failed to disclose her daughter's involvement in a robbery, and, as a result, then APD Chief William Hogan decided that Clark would be fired. When Hogan notified Richmond of Clark's impending termination, Richmond asked Hogan to wait until Richmond could determine whether Clark could retire instead. In reality, Clark lacked sufficient accrued time to retire. However, the retirement documents submitted to the State Retirement System ("the Retirement System") contain evidence of multiple alterations to make it appear that Clark did qualify for retirement. The altered documents were not discovered at the time, and Clark retired.
In late 2009, Cheryl Walker, HR benefits and wellness manager for Asheville, informed Richmond that two other HR employees, Liz Oldre and Laura Masters, had been taking excessive deductions from their flexible benefits accounts. Richmond referred the allegations to the City Attorney for Asheville who in turn referred the matter to the APD. APD Captain Timothy Splain was assigned as the lead investigator on the case. Splain asked APD Detective Michael Downing, who was retiring from the police force, but had strong white collar criminal investigation experience, to assist. Downing retired from the APD but shortly thereafter took a job with the District Attorney's office and continued to work on the investigation with Splain. During an interview with Splain, Oldre disclosed the alteration of Clark's retirement paperwork, claiming that Richmond had "stood over her shoulder" and instructed her to "fudge the numbers."
Also during the investigation, Splain came to believe that Asheville's assistant HR director, Robin Nix, might have submitted fraudulent claims to Asheville's employee flexible spending plan. Splain asked Richmond to review Nix's file and tell him if she saw evidence of fraud. Richmond told Splain she thought Nix's file was "okay." However, Splain later learned, and Richmond admitted, that she had only reviewed the forms submitted by Nix and had not reviewed the attached documentation for Nix's claims. Splain had halted his investigation of Nix following Richmond's initial report that Nix's file was "okay," but renewed his investigation after learning that Richmond had not fully reviewed the file. Nix later confessed and pled guilty to three counts of obtaining property by false pretenses in connection with the flexible spending account claims.
On 25 March 2010, Splain told Richmond she would be charged with obstruction of justice, a felony, in connection with the Nix matter, and with making false statements to the Retirement System, a misdemeanor, in connection with the alteration of Clark's retirement documents. City Manager Gary Jackson asked Richmond to resign from her employment with Asheville on 26 March 2010. Jackson testified that he sought Richmond's resignation, not because of the criminal charges against her, but rather because he believed Richmond had lost control of the HR department in light of the fraud-related guilty pleas by Nix and two other HR employees. On 29 March 2010, Richmond was formally charged with obstruction of justice and fraud against the Retirement System.
The misdemeanor charge of making false statements to the Retirement System came on for trial in Buncombe County District Court in March 2011. Richmond testified that the alterations in Clark's paperwork were made pursuant to a city HR policy then in effect. As it turned out, the city policy was in contravention of State law, a discovery that eventually led to a settlement between the Retirement System and Asheville due to payments made to retired Asheville employees under the policy. Richmond denied having asked Oldre to "fudge the numbers" for Clark, however, and testified that Oldre had been entirely in charge of handling the preparation and submission of the altered documents. The district court ultimately dismissed the charge. The felony charge of obstruction of justice was voluntarily dismissed by the prosecutor in October 2012.
On 17 April 2013, Richmond filed a complaint against Defendants Asheville, Splain, Hogan, Jackson, and Downing, asserting claims for violation of 42 U.S.C. § 1983, malicious prosecution, conspiracy, and various State constitutional violations. The individual defendants were all named in both their official and individual capacities. Before the defendants answered, Richmond dismissed her section 1983 claims against all defendants. On 15 July 2013, the defendants filed a motion to dismiss and an answer, asserting, inter alia,governmental immunity as a complete bar to all of Richmond's claims. Following discovery, Richmond voluntarily dismissed her claims against Downing and Jackson. The remaining defendants ("Defendants") moved for summary judgment on 31 October 2014. Following a hearing, the trial court granted Defendants' motion to dismiss all of Richmond's claims on 20 November 2014. The order granting summary judgment stated, inter alia:
THE COURT having reviewed the file, considered the briefs of the parties and materials submitted to the [c]ourt therewith, and heard arguments of counsel, hereby concludes there is no genuine issue as to any material fact as to the issues of governmental or public official immunity or the availability of State constitutional remedies. Furthermore, notwithstanding immunity, Plaintiff has also failed to show any genuine issue of material fact with respect to her claims for malicious prosecution and conspiracy. [ ]Defendants are therefore entitled to judgment as a matter of law on all claims.
From that order, Richmond appeals, arguing that the trial court erred in granting Defendants' motion for summary judgment as to Richmond's claims for malicious prosecution, conspiracy, and various constitutional violations. Specifically, Richmond contends that she forecast sufficient evidence of malice in the acts of Defendants to survive summary judgment, to wit, that they participated in bringing criminal charges against her in the absence of probable cause. We disagree, and, accordingly, affirm the summary judgment order.
Discussion
"Our standard of review of an appeal from summary judgment is de novo;such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." In re Will of Jones,362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and internal quotation marks omitted; italics added). In her malicious prosecution claims, Richmond alleged that Defendants "maliciously instituted or caused to be instituted criminal proceedings against [Richmond] ... without probable cause." On, appeal, Richmond contends that she forecast sufficient evidence of malice on the part of Defendants to create a genuine issue as to that material fact. As for her constitutional claims, Richmond contends that, if this Court determines that her malicious prosecution claims were barred by the defense of governmental immunity such that she lacks an adequate state remedy, she would be entitled to move forward on those claims. For the reasons discussed below, we affirm the trial court's summary judgment order.
I. Malicious prosecution
Generally, "[u]nder the doctrine of governmental immunity, a municipality is not liable for the torts of its officers and employees if the torts are committed while they are performing a governmental function." Beck v. City of Durham,154 N.C.App. 221, 229, 573 S.E.2d 183, 189 (2002) (citation, internal quotation marks, and ellipsis omitted). "[T]he doctrine of governmental immunity also bars actions against public officials sued in their official capacity. The chief of police and the city manager are both considered public officials." Id.at 229-30, 573 S.E.2d at 190 (citations and internal quotation marks omitted). Law enforcement officers are also covered by governmental immunity. Turner v. City of Greenville,197 N.C.App. 562, 566, 677 S.E.2d 480, 483 (2009). Further,
the public immunity doctrine protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties.
In this jurisdiction an official may be held liable when he acts maliciously or corruptly, when he acts beyond the scope of his duties, or when he fails to act at all. As long as a public official lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.
Id.(citations, internal quotation marks, and brackets omitted). Thus, only tortious "actions that are malicious, corrupt, or outside of the scope of official duties will pierce the cloak of official immunity." Id.(citation, internal quotation marks, brackets, and ellipsis omitted). Likewise, "if the plaintiff alleges an intentional tort claim, a determination of governmental immunity is unnecessary since, in such cases, neither a public official nor a public employee is immunized from suit in his individual capacity." Beck,154 N.C.App. at 230, 573 S.E.2d at 190 (citation, internal quotation marks, and brackets omitted).
A plaintiff alleging malicious acts or intentional torts by a governmental official faces a high bar:
It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence. Moreover, evidence offered to meet or rebut the presumption of good faith must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise.
Strickland v. Hedrick,194 N.C.App. 1, 10-11, 669 S.E.2d 61, 68 (2008) (citations, internal quotation marks, and brackets omitted).
To prevail on a claim for the intentional tort of malicious prosecution, a plaintiff must establish that the defendant acted with malicein a criminal proceeding against plaintiff without probable causein which the plaintiff ultimately prevailed. Williams v. Kuppenheimer Mfg. Co.,105 N.C.App. 198, 200, 412 S.E.2d 897, 899 (1992) (emphasis added). "Legal malice suffices to support an award of compensatory damages for malicious prosecution. It is well settled that legal malice may be inferred from a lack of probable cause." Id.at 203, 412 S.E.2d at 91 (citations omitted).
[W]hen punitive damages are claimed, the plaintiff must go further and offer evidence tending to prove that the wrongful act of instituting the prosecution was done from actual malice in the sense of personal ill will, or under circumstances of insult, rudeness, or oppression, or in a manner which showed the reckless and wanton disregard of the plaintiff's right.
Cook v. Lanier,267 N.C. 166, 171, 147 S.E.2d 910, 914-15 (1966) (citation, internal quotation marks, and brackets omitted).
Our review reveals that Richmond failed to carry her burden to show evidence of either legal malice, i.e.,a lack of probable cause to support the charges brought against her, or of actual malice, in the form of evidence that those charges were brought against her for improper, retaliatory purposes.
Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances strong [enough] in themselves to warrant a cautious man in believing the accused to be guilty. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.
Probable cause for an arrest warrant is presumed valid unless [the] plaintiff presents allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.
Beeson v. Palombo,220 N.C.App. 274, 279, 727 S.E.2d 343, 347 (citation and internal quotation marks omitted), disc. review denied,366 N.C. 389, 732 S.E.2d 352 (2012).
"Evidence that the chief aim of the prosecution was to accomplish some collateral purpose, or to forward some private interest ... is sufficient to establish a prima faciewant of probable cause." Dickerson v. Atlantic Refining Co.,201 N.C. 90, 95, 159 S.E. 446, 4449 (1931) (citations omitted; italics added). However, where a plaintiff's "conclusory averments rest, ... not on experienced or otherwise substantiated fact, but on [the] plaintiff's subjective assessment of [a] defendant's motivations .... [the p]laintiff has not forecast evidence sufficient to permit reasonable minds to conclude that retaliatory motives behind [the defendant's] actions did, in fact, exist." Dempsey v. Halford,183 N.C.App. 637, 641-42, 645 S.E.2d 201, 205-06 (2007) (citations and internal quotation marks omitted).
Here, the trial court's rulings on Defendants' defense of governmental immunity to both the alleged State constitutional violations and Defendants' motion for summary judgment on Richmond's claims of malicious prosecution are supported, inter alia,by Richmond's failure to forecast sufficient evidence of malice on the part of Defendants in connection with the obstruction of justice and fraud charges brought against her. Simply put, Richmond failed to produce an offer of proof regarding her allegations of deliberate falsehood as required to rebut the presumption of the validity of probable cause to support the indictment and warrants against her.
"Obstruction of justice is .... any act which prevents, obstructs, impedes or hinders public or legal justice." State v. Wright,206 N.C.App. 239, 241, 696 S.E.2d 832, 834-35 (2010) (citations and internal quotation marks omitted). The indictment here alleged that Richmond obstructed justice "by misleading Captain Tim Splain of the Asheville Police Department by telling him that she had received the flexible reimbursement benefit claims of Robin Nix and did not find anything wrong with them." Splain's investigation notes indicate, and Richmond has admitted, that she told Splain that Nix's claims looked "okay" when Splain asked Richmond if she had found "anything wrong" with them, although Richmond later acknowledged that the claims lacked basic supporting documentation, a fact which would be immediately apparent to an HR professional such as herself.
The fraud charge against Richmond was based upon an allegation that she falsified or caused to be falsified some of Clark's retirement records. SeeN.C. Gen.Stat. § 128-32 (2013) ("Any person who shall knowingly make any false statement or shall falsify or permit to be falsified any record or records of this Retirement System in any attempt to defraud such System as a result of such act shall be guilty of a Class 1 misdemeanor."). The documents submitted to the Retirement System in connection with Clark's retirement showed evidence of being altered, and Oldre told Splain that Richmond had "stood over her shoulder" and instructed her to "fudge the numbers" regarding Clark's retirement.
Based upon these showings, "[p]robable cause ... is presumed valid [,]" and, to rebut that presumption, Richmond was required to "present [ ] allegations of deliberate falsehood or of reckless disregard for the truth ... accompanied by an offer of proof." See Beeson,220 N.C.App. at 279, 727 S.E.2d at 347 (citation omitted; emphasis added). As for a showing of actual malice, Richmond asserted a theory: that there was "significant conflict" between herself and the APD regarding a proposed compensation structure which would have increased compensation for command level APD officials, including Hogan and Splain. In her role as HR director, Richmond directed her employees to study the proposal, which was supported by Hogan and Splain. Ultimately, Richmond opposed the proposed compensation structure, which at one point led to a "shouting match" among Richmond, Hogan, and APD captains during a meeting. Richmond contends that this history permits an inference of Defendants' improper purpose in bringing criminal charges against her.
However, Richmond was unable to forecast any evidenceto support her theory, instead relying solely on her "assumption" that, since she did not obstruct justice or commit fraud, Defendants must have brought the criminal charges against her in retaliation for her opposition to the proposed APD compensation structure. For example, when asked about evidence of Hogan's malice, Richmond merely asserted her innocence: "I cooperated fully with the investigation. Chief Hogan was in charge. I didn't-I didn't obstruct justice. I didn't defraud the state retirement system." When asked to clarify that she had "no evidence, apart from sort of the legal result of this case, that Chief Hogan did anything out of spite, or malice, or improper motive[,]" Richmond conceded that characterization was "[c]orrect." Similarly, when asked about her evidence that Splain acted with malice, Richmond testified: "What I believe Splain knew is that I cooperated fully. His name is-he was the lead investigator. He knows I cooperated fully. His name is on the warrant saying that I told him something that I didn't tell him. And there is no other explanation I can come up with." A plaintiff's bare assertion that, because she was innocent of the charges brought against her, the only explanation is that the defendants must have acted with malice in bringing the charges, is wholly insufficient to establish a prima facielack of probable cause. See Dempsey,183 N.C.App. at 641-42, 645 S.E.2d at 206-07. Assumptions are simply not evidence, and Richmond's "conclusory averments" here were not sufficient to establish malice in the form of an improper purpose in the bringing of criminal charges. See id.This argument is overruled.
II. State constitutional claims
Richmond also argues that, if her malicious prosecution claims were barred by the defense of governmental immunity such that she lacks an adequate state remedy, she would be entitled to move forward on the claims alleging State constitutional violations. Because Richmond had an adequate remedy in the form of an opportunity to bring malicious prosecution claims against Defendants, she is not entitled to proceed with her claims of constitutional violations.
[S]overeign immunity does not bar state constitutional claims: The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights.
....
[Thus,] in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution. Therefore, in order for [a] plaintiff[ ] to proceed under the state constitution, [she] must establish that [she] lacked an adequate alternative state remedy.
An alternative remedy is adequate when a plaintiff [has] at least the opportunity to enter the courthouse doors and present [her] claim. Phrased differently, an adequate remedy must provide the possibility of relief under the circumstances.
Patterson v. City of Gastonia,220 N.C.App. 233, 239, 242, 725 S.E.2d 82, 88, 90 (citations and internal quotation marks omitted), appeal dismissed and disc. review denied,366 N.C. 406, 759 S.E.2d 82 (2012). As noted in section I, malicious prosecution claims, like all intentional torts, are not barred by the defense of governmental immunity. Thus, Richmond had an adequate state remedy for the wrongful actions that she alleges: "the opportunity to enter the courthouse doors and present [her] claim[s]" for malicious prosecution. See id.at 242, 725 S.E.2d at 90 (citation omitted). Richmond's failure to establish malice, an element of that claim, does not render the remedy inadequate. See, e.g., Rousselo v. Starling,128 N.C.App. 439, 449, 495 S.E.2d 725, 732 (holding that a tort remedy is not inadequate simply because it requires the plaintiff to show that the defendant acted with malice and the plaintiff is not able to make such a showing), appeal dismissed and disc. review denied,348 N .C. 74, 505 S.E.2d 876 (1998).
The trial court's order granting Defendants' motion for summary judgment is
AFFIRMED.
Judges BRYANT and DIETZ concur.
Report per Rule 30(e).
Opinion
Appeal by Plaintiff from order entered 20 November 2014 by Judge Richard L. Doughton in Buncombe County Superior Court. Heard in the Court of Appeals 2 June 2015.